

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00066-CR

DANNY GIPSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 10F0430-005

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

*Jack Carter, Retired, Sitting by Assignment

MEMORANDUM OPINION

Danny Gipson was indicted for indecency with a child by exposure, a third-degree felony.[1] After the trial court denied Gipson's motion to suppress evidence, Gipson pled guilty to the third-degree felony, and the trial court found him guilty and sentenced him to ten years' confinement. On appeal, Gipson complains that the judgment of conviction should be modified by deleting the entry under its "Terms of Plea Bargain" section, that his guilty plea was involuntary, and that his trial counsel rendered ineffective assistance of counsel. Because we find that (1) a plea agreement is reflected in this record, (2) nothing shows that Gipson's plea was involuntary, and (3) nothing shows ineffective assistance of counsel, we will affirm the trial court's judgment.

In November 2009, C.S.'s[2] mother reported to police that, as her daughter was walking home from a bus stop, a vehicle pulled beside her and the driver waved to her. When she looked at him, C.S. saw that the driver's pants were undone and that he was masturbating. C.S. told her mother that this had happened many times before. Several days later, C.S. saw the vehicle again and was able to give the police the license plate number. About a week later, Autumn Endsley reported that, when she approached her vehicle in a shopping center parking lot, she was followed by a vehicle, which parked next to her. She saw that the driver was looking at her and masturbating. Endsley was able to give the police the vehicle's license plate number, which matched that of the vehicle identified by C.S.

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A), (d).

[2]Because C.S. was a minor at the time the offense was committed, we identify her by her initials. *See* TEX. R. APP. P. 9.10.

A few days later Gipson was stopped driving the same vehicle. He was photographed, and his photograph was placed in a photographic lineup. When shown the photographic lineup, both C.S. and Endsley identified Gipson as the person who had exposed himself to them.

As a result, Gipson was charged with indecency with a child by exposure. In addition to charging Gipson with indecency with a child, the indictment alleged that Gipson was a habitual offender and alleged that Gipson had two prior felony convictions. Prior to trial, Gipson filed a motion to suppress the results of the photographic lineup. After a hearing, the trial court denied the motion.

As will be detailed later, at the final pretrial hearing on May 13, 2019, the State was granted its motion to remove the enhancement allegations from the indictment, and Gipson pled guilty to the resulting charge. The trial court found him guilty and sentenced him to ten years' imprisonment.[3]

The trial court also executed a certification of defendant's right of appeal that indicated that the case was not a plea-bargain case and that Gipson had the right to appeal. Although the trial court also timely appointed appellate counsel for Gipson, no notice of appeal was filed by that counsel. On Gipson's application for a writ of habeas corpus, the Texas Court of Criminal Appeals granted Gipson's request to be allowed to file an out-of-time appeal. The trial court subsequently appointed new appellate counsel, who asserted that this was a plea-bargain case and requested permission to appeal various issues. The trial court granted Gipson permission to appeal. This appeal ensued.

---

[3]The trial court's written judgment of conviction was entered on June 12, 2019.

*(1)      A Plea Agreement Is Reflected in this Record*

Gipson claims error in how the judgment described his plea. In the "Terms of Plea Bargain" section of the trial court's written judgment of conviction, the trial court entered "TEN (10) YEARS TEXAS DEPARTMENT OF CRIMINAL JUSTICE INSTITUTIONAL DIVISION; $5000.00 FINE; $484.00 COURT COSTS." In his first issue, Gipson contends that this section of the judgment of conviction should be modified to indicate that there was no plea agreement and argues that his guilty plea was an "open plea." The State agrees that the judgment should be modified and contends that the record should reflect that the State and Gipson intended to pursue an "open plea."

As several of our sister courts of appeals have noted, the term "open plea" is an "imprecise legal term of art." *Harper v. State*, 567 S.W.3d 450, 454 (Tex. App.—Fort Worth 2019, no pet.) (quoting *Kassube v. State*, Nos. 12-08-00364-CR, 12-08-00365-CR, 2010 WL 697362, at *2 n.3 (Tex. App.—Tyler Feb. 26, 2010, no pet.) (mem. op., not designated for publication). In some instances, the term is used to mean "a plea where no plea bargaining of any kind has occurred." *Id.* (quoting *Kassube*, 2010 WL 697362, at *2 n.3) (citing *Brumit v. State*, 206 S.W.3d 639, 641 (Tex. Crim. App. 2006)). At other times, "open plea" has been used to mean "a plea where charge bargaining, but not sentence bargaining, has occurred." *Id.* (quoting *Kassube*, 2010 WL 697362, at *2 n.3) (citing *State v. Moore*, 240 S.W.3d 248, 250–51 (Tex. Crim. App. 2007)). This usage might occur, for instance, when the State agrees to dismiss additional pending charges, effectively putting a cap on punishment at the maximum sentence of

4

the remaining charge, but there is no agreement as to the exact punishment. *See Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003).

While the two types of "open plea" have a common denominator, i.e., the defendant's plea of guilty without an agreement as to the precise punishment he will receive, the parties' agreement that there was an "open plea" does not indicate whether it was the result of a plea agreement. *See Harper*, 567 S.W.3d at 454–55. Consequently, we must examine the record to make this determination.

A plea agreement may either be a sentence bargain, in which a defendant agrees to enter a plea of guilty in exchange for the State's binding or non-binding recommendation to the court regarding punishment, or a charge bargain, which involves questions of whether a defendant "will plead guilty to the offense that has been alleged or to a lesser or related offense, and of whether the prosecutor will dismiss, or refrain from bringing, other charges." *Thomas v. State*, 516 S.W.3d 498, 502 (Tex. Crim. App. 2017) (quoting *Shankle*, 119 S.W.3d at 813). Thus, an agreement to dismiss a pending charge, or not to bring an available charge, which "effectively puts a cap on punishment at the maximum sentence for the charge that is not dismissed," will be construed as a charge bargain. *Shankle*, 119 S.W.3d at 813. Because an agreement by the State to dismiss enhancement allegations in return for a guilty plea to the unenhanced charged offense reduces the maximum punishment from that of the enhanced punishment to the maximum for the unenhanced charged offense, such an agreement has been construed to be a charge bargain. *See Harper*, 567 S.W.3d at 455; *Hargraves v. State*, Nos. 01-13-00194-CR, 01-13-00195-CR, 01-13-00196-CR, 2013 WL 1932139, at *1 (Tex. App.—Houston [1st Dist.] May 9, 2013, no pet.) (per

5

curiam) (mem. op., not designated for publication);[4] *Cox v. State*, No. 12-11-00297-CR, 2012 WL 2501031, at *2 (Tex. App.—Tyler June 29, 2012, no pet.) (mem. op, not designated for publication); *see also Jones v. State*, 488 S.W.3d 801, 807 (Tex. Crim. App. 2016) (recognizing that State's agreement to abandon enhancement paragraphs in exchange for guilty plea and waiver of right of appeal was a plea agreement).

To determine the terms of a plea agreement, we "look to the written agreement, as well as the formal record." *Thomas*, 516 S.W.3d at 502. Since there is no written plea agreement, we must look to the formal record to discern the parties' intent regarding whether Gipson's guilty plea was the result of a plea agreement.

The record shows that Gipson was indicted for indecency with a child by exposure, a third-degree felony, but with the addition of habitual-offender allegations of two prior felonies. Hence, under the indictment, Gipson faced a minimum imprisonment of twenty-five years and a maximum of ninety-nine years or life. *See* TEX. PENAL CODE ANN. § 12.42(d). At the final pretrial before trial, the following exchange took place:

> [Defense Attorney]: Your Honor, Mr. Gipson wishes to enter a change of plea after the state makes a motion.
>
> [State's Attorney]: Prior to that, Your Honor, the state's going to move to withdraw the habitual offender allegations as provided on the indictment.
>
> [Defense Attorney]: And with that, may I approach, Your Honor?
>
> THE COURT: State's -- hold on. The state's moving to withdraw the habitual offender -- paragraphs?

---

[4]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[State's Attorney]: Allegations, yes, sir, there are two of them.

THE COURT: And you're moving to strike those from the indictment?

[State's Attorney]: Yes, sir.

THE COURT: I assume you don't have any objection to that?

[Defense Attorney]: No, Your Honor.

THE COURT: All right, the state will grant -- or the Court will grant the state's motion to strike the habitual offender paragraphs. All right, is it your intention to enter a plea then on this matter?

[Defense Attorney]: It is, Your Honor. May I approach?

THE COURT: You may approach. (Accepts document 13 from Defense Counsel)

After Gipson was sworn, the trial court went over the written plea admonishments he received from Gipson, which the record shows had already been signed by Gipson, his attorney, and the State. Even though prepared before the hearing and before the State had moved to dismiss the habitual-offender allegations, the written plea admonishments reflect that, under the heading "If convicted, you face the following range of punishment," the box that was checked was "THIRD DEGREE FELONY: (2-10 years)" rather than "HABITUAL OFFENDER: (Life or 25–99 years)."

Although the parties and the trial court treated this as an open plea with no plea agreement, the record shows that the parties had agreed to a bargain whereby, in exchange for Gipson's guilty plea to the charged third-degree felony, the State would strike the habitual-

7

offender allegations, thereby placing a cap on punishment of ten years' imprisonment.[5] *See Shankle*, 119 S.W.3d at 813. Thus, although Gipson entered an "open plea" in that there was no agreed-upon term of punishment, his open plea arose out of a charge bargain that limited his punishment to a maximum of ten years' imprisonment. Consequently, we find that Gipson's plea was the product of a plea agreement. We overrule this issue.

Nevertheless, because the written judgment does not correctly reflect the parties' agreement, it should be modified. "We have the authority to modify the judgment to make the record speak the truth." *Minter v. State*, 570 S.W.3d 941, 944 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.)). The written judgment states that the parties agreed to a ten-year sentence and a $5,000.00 fine, yet the record does not support this statement. Rather, the record shows that Gipson agreed to plead guilty to the charged offense in exchange for the State dismissing the enhancement allegations, with the trial court to determine punishment. Therefore, we modify the judgment by replacing the statement under the "Terms of Plea Agreement" section with "Defendant to plead guilty to charged offense after State dismisses enhancement allegations; punishment to be assessed by Court."

*(2)    Nothing Shows that Gipson's Plea Was Involuntary*

Gipson also complains that his plea was involuntary because he mistakenly believed that his right of appeal included the right to challenge the denial of his motion to suppress. Gipson

---

[5]The State stated in its appellate brief that it had "provided proper consideration by dropping the enhancement paragraphs . . . in exchange for a guilty plea."

asserts that, because the written plea admonishments indicated that his plea arose from a plea agreement, but the trial court treated it as an open plea and did not admonish him that he had a limited right of appeal after an open plea, there was confusion regarding his right to appeal. He argues that this confusion caused his plea to be involuntary.[6]

Due process requires that a guilty plea be entered knowingly, intelligently, and voluntarily. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). Article 26.13 of the Texas Code of Criminal Procedure requires the trial court to admonish the defendant regarding certain facts before accepting his guilty plea. TEX. CODE CRIM. PROC. ANN. art. 26.13(a). These admonishments may either be in writing signed by the defendant and his attorney, or they may be given orally. TEX. CODE CRIM. PROC. ANN. art. 26.13(d). When the record shows that the trial court properly admonished the defendant in substantial compliance with Article 26.13, a prima facie showing that his guilty plea was knowing and voluntary is created. *Friemel v. State*, 465 S.W.3d 770, 775 (Tex. App.— Texarkana 2015, pet. ref'd) (citing *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998)). The defendant then has the burden "to show that he did not fully understand the consequences of his plea and that he was misled or harmed by the admonition." *Id.* (citing *Martinez*, 981 S.W.2d at 197).

---

[6]The State argues that Gipson waived his right of appeal but does not direct us to any place in the record that supports this contention. The record in this case shows that, at the plea hearing, the trial court assured Gipson that it would give him the right to appeal as required by law and that the trial court granted Gipson's request for permission to appeal after the Texas Court of Criminal Appeals granted him permission to file an out-of-time appeal. On this record, we find that Gipson did not waive his right to appeal. *Ex parte De Leon*, 400 S.W.3d 83, 89 (Tex. Crim. App. 2013).

The record shows that Gipson and his trial counsel signed written admonishments that comply with Article 26.13 and that Gipson orally reaffirmed his understanding of the admonishments at the plea hearing. Since Gipson was properly admonished, the burden shifted to him to establish that he failed to understand the consequences of his plea and that he was misled or harmed by the trial court's admonitions.

Gipson has failed to meet his burden. Gipson's complaint on appeal is that he was confused because he mistakenly believed he would have the right to appeal the denial of his motion to suppress and that the mistake arose because the trial court failed to admonish him on the limited right of appeal when there is an open plea without a plea agreement. As we addressed above, Gipson's open plea arose out of a charge bargain. When a charge bargain effectively caps the maximum punishment, it is governed by Rule 25.2(a)(2) of the Texas Rules of Appellate Procedure. *See Shankle*, 119 S.W.3d at 813. Rule 25.2(a)(2) provides:

In a plea bargain case . . . a defendant may appeal only:

(A)   those matters that were raised by written motion filed and ruled on before trial,

(B)   after getting the trial court's permission to appeal, or

(C)   where the specific appeal is expressly authorized by statute.

TEX. R. APP. P. 25.2(a)(2). Since the record shows that Gipson's motion to suppress was a written motion that was ruled on before trial, he had a right to appeal the trial court's ruling on that motion. In addition, the trial court granted Gipson's request to appeal, which included a request to appeal the denial of his motion to suppress, as well as any other matter identified by his appellate counsel. Since he was granted the right to appeal the denial of his motion to

10

suppress both by rule and by the trial court's order, Gipson could not have been misled or harmed by the trial court's admonitions.

Further, even if Gipson had entered a non-bargained-for open plea, it is not clear that he would not have been able to appeal the trial court's denial of his motion to suppress. In *Monreal v. State*, the Texas Court of Criminal Appeals construed Rule 25.2 and its prior holding in *Young v. State*[7] and concluded that "both bargaining and non-bargaining defendants can appeal rulings on written, pre-trial motions." *Monreal v. State*, 99 S.W.3d 615, 620 (Tex. Crim. App. 2003).

Finally, there is nothing in the record that supports Gipson's contention that he pled guilty in reliance on his understanding that he had a right to appeal the denial of his motion to suppress or that he has been denied that right on appeal. During the plea hearing, neither Gipson nor his trial counsel ever mentioned that his plea was conditioned on this understanding or that he intended to appeal the trial court's ruling on his motion to suppress. Although Gipson filed numerous post-trial motions, none of them contend that his plea was based on his understanding that he could appeal the ruling on his motion to suppress. Also, the trial court granted Gipson's request for permission to appeal after the Texas Court of Criminal Appeals gave him permission to file an out-of-time appeal. Thus, he has not been denied the right to appeal the denial of his motion to suppress.

---

[7]*Young v. State*, 8 S.W.3d 656, 666–67 (Tex. Crim. App. 2000) ("Whether entered with or without an agreed recommendation of punishment by the State, a valid plea of guilty or nolo contendere 'waives' or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error.").

11

Since Gipson has not shown that he did not fully understand the consequences of his plea and that he was misled or harmed by the admonition, he has failed to show that his plea was involuntary. *See Friemel*, 465 S.W.3d at 775. Therefore, we overrule this issue.

*(3)     Nothing Shows Ineffective Assistance of Counsel*

Gipson complains that his trial counsel gave him ineffective assistance of counsel. "In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*." *Lampkin v. State*, 470 S.W.3d 876, 896 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009)). "The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness." *Id.* at 896–97 (citing *Strickland*, 466 U.S. at 688). "This requirement can be difficult to meet since there is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 897 (citing *Strickland*, 466 U.S at 689).

"The second *Strickland* prong, sometimes referred to as 'the prejudice prong,' requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "'A reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

"A failure to make a showing under either prong defeats a claim for ineffective assistance." *Id.* (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)). Alleged ineffectiveness must be clearly shown by the record. *Id.* (quoting *Bone v. State*, 77

12

S.W.3d 828, 833 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999))). Addressing such claims requires us to perform a case-by-case examination. *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment))).

Gipson identifies two instances in which he claims that his trial counsel's assistance was deficient. First, Gipson asserts that the record does not indicate that his trial counsel informed him that he would not be able to appeal the trial court's denial of his motion to suppress. Since Gipson could have appealed this ruling, this argument is without merit.[8]

Gipson also complains that his trial counsel failed to call C.S. as a witness at the hearing on his motion to suppress in order to determine whether the photographic lineup was conducted without undue influence. However, the record does not reflect what C.S.'s testimony would have been, and we may not speculate that it would have been, favorable to Gipson. Rather, it is possible that Gipson's trial counsel knew C.S.'s testimony would be unfavorable. Or, not knowing what her testimony would be, trial counsel may have thought it better to argue that the photographs used in the lineup were objectively unduly suggestive rather than risk unfavorable testimony from C.S. "[W]here the reviewing court 'can conceive potential reasonable trial strategies that counsel could have been pursuing,' the court 'simply cannot conclude that counsel has performed deficiently.'" *Id.* at 898 (quoting *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)).

---

[8]We also note that to show ineffective assistance of counsel, it is insufficient to note that the record *does not indicate* that counsel gave his client correct information regarding the consequences of his plea. Rather, it must "be firmly founded in the record" that counsel gave his client incorrect information regarding the consequences of his plea. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

13

Because the record does not support Gipson's allegations of trial counsel's ineffectiveness, we overrule this issue.

For the reasons stated, we modify the trial court's judgment by replacing the statement under the "Terms of Plea Agreement" section with "Defendant to plead guilty to charged offense after State dismisses enhancement allegations, punishment to be assessed by Court."

We affirm the trial court's judgment, as modified.

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 28, 2020
Date Decided:       December 29, 2020

Do Not Publish

14