

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00016-CR
_____

STANLEY DEON HARPER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 56,707-C

---

Before Gabriel, Kerr, and Birdwell, JJ.
Opinion by Justice Kerr

## OPINION

After the State agreed to drop the enhancement paragraphs in exchange for appellant Stanley Deon Harper's guilty plea, Harper entered what the prosecutor, defense counsel, and the trial court all referred to as an "open plea" to the offense of aggravated assault with a deadly weapon, and the trial court sentenced him to the maximum 20 years in prison. In three issues, Harper contends that (1) his constitutional right to a speedy trial was violated; (2) trial counsel rendered ineffective assistance; and (3) trial counsel's ineffective assistance rendered his guilty plea involuntary. Holding that we have no jurisdiction over Harper's second and third issues, we dismiss them. We do have jurisdiction over his first issue but overrule it and affirm the trial court's judgment.

## I. Factual Background

On April 5, 2015, the police received a 911 call reporting that a man named "Stanley" was assaulting the female caller. On the 911 recording, the woman can be heard identifying her attacker as "Stanley" numerous times. When the police arrived at the woman's apartment, they found her with a stab wound.

The woman (complainant) told the police that she had been asleep and had heard a large crash, so she got up to investigate and saw Harper, her ex-boyfriend,[1] crawling in through the (now) broken kitchen window. The complainant also told the

---

[1]When later testifying for the defense, the complainant referred to Harper as her husband.

2

police that Harper proceeded to attack and stab her, after which she grabbed her phone and called 911. Harper then took her phone and fled.

Although the complainant told the police that Harper had stabbed her, she was uncooperative and initially refused to be taken to the hospital. While at her apartment, the police saw—in addition to the broken kitchen window—that her door had been kicked in from an earlier reported incident in March 2015 that had also involved Harper.

Thereafter the complainant's unwillingness to cooperate persisted. She later maintained that she had inflicted the stab wound on herself and signed non-prosecution affidavits.

## II. Procedural Background

In its indictment, the State alleged that Harper committed the offense of aggravated assault with a deadly weapon. Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). As alleged, the offense was a second-degree felony, punishable by imprisonment for a term between two and twenty years and a fine not to exceed $10,000. *Id.* § 12.33 (West 2011), § 22.02(b). The State also alleged two prior felony convictions in an enhancement paragraph, which, if found true, changed his punishment range to imprisonment in the penitentiary "for life, or for any term of not more than 99 years or less than 25 years." *Id.* § 12.42(d) (West Supp. 2018).

The State and Harper ultimately entered a plea-bargain agreement under which the State agreed to drop the enhancement allegations and Harper agreed to plead

3

guilty to aggravated assault with a deadly weapon, thus reducing his punishment range to the milder two-to-twenty years plus a fine up to $10,000. On the actual punishment that might be assessed within that reduced range, the State, Harper, and the trial court all agreed that Harper was entering an "open plea."

After hearing evidence, the trial court sentenced Harper to 20 years in the penitentiary and no fine. In its judgment, under the section entitled, "Terms of Plea Agreement," the trial court wrote, "None—Open to Court." In the State's brief, it asserts that Harper "went open to the judge in return for the State dropping two enhancement paragraphs from his indictment." Harper's brief says that "[i]n return for his plea of guilt, the State dropped the felony enhancement paragraphs of the indictment." Nonetheless, the form entitled "Trial Court's Certification of Defendant's Right of Appeal" incorrectly indicates, among the several options available for the court to check, that Harper's case "is not a plea-bargain case and the defendant has the right to appeal."

## III.    No jurisdiction over issues two and three

In issues two and three, Harper argues that trial counsel rendered ineffective assistance by not subpoenaing the complainant, who by the time of trial was a known exculpatory witness, and that trial counsel's ineffective assistance rendered his guilty plea involuntary.

Although neither the State nor Harper discusses any jurisdictional issue, we must independently satisfy ourselves that jurisdiction exists. *See Jones v. State,*

4

42 S.W.3d 143, 147 (Tex. App.—Amarillo 2000, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 44.02 ("Defendant May Appeal") (West 2018); Tex. R. App. P. 25.2(a)(2).

## A. Article 44.02—the relevant statute

The code of criminal procedure provides:

> A defendant in any criminal action has the right of appeal . . . , however, before the defendant who has been convicted upon . . . his plea of guilty . . . and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney may prosecute his appeal, he *must have permission of the trial court*, except on those matters which have been raised by written motion filed prior to trial. . . .

Tex. Code Crim. Proc. Ann. art. 44.02 (emphasis added).

## B. Rule 25.2(a)(2)—the relevant rule

The applicable appellate rule provides:

> In a plea bargain case—that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—a defendant may appeal only:
>
> > (A) those matters that were raised by written motion filed and ruled on before trial, or
> >
> > (B) after getting the trial court's permission to appeal.

Tex. R. App. P. 25.2(a)(2).

## C. Defining an "open plea"

Because Harper entered what everyone referred to as an "open plea," both the parties and the trial court effectively concluded that his appeal fell outside article 44.02 and rule 25.2(a)(2), affording him an absolute right to appeal.

The Tyler Court of Appeals has remarked that "[t]he term 'open plea' is an imprecise legal term of art. In some instances, it has been defined to involve a plea where charge bargaining, but not sentence bargaining, has occurred." *Kassube v. State*, Nos. 12-08-00364-CR, 12-08-00365-CR, 2010 WL 697362, at *2 n.3 (Tex. App.—Tyler Feb. 26, 2010, no pet.) (mem. op., not designated for publication); *see* 25 Am. Jur. *Trials* § 69 (May 2018 Update) ("A plea agreement in which the trial court has discretion over the length of the sentence is referred to as an 'open plea.'" (quoting *Edsall v. State*, 983 N.E.2d 200, 204 (Ind. App. 2013))). That is precisely how the trial court and the parties used "open plea" in this case: one arising out of a charge bargain.[2] In other words, in exchange for Harper's guilty plea, the State agreed to alter the charges against him and thus decrease the punishment range.

But the *Kassube* court continued, "In other instances, ['open plea'] has been defined to involve a plea where no plea bargaining of any kind has occurred," noting

---

[2]At least one court has balked at using the term "open plea" to describe a charge bargain. *See Threadgill v. State*, 120 S.W.3d 871, 872 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("The cap was also written in the plea papers and the court's judgment. We hold that anything in the record indicating that there was no agreed recommendation did not convert this proceeding into an open plea.").

that *Black's Law Dictionary* does not define an "open plea." 2010 WL 697362, at *2 n.3. In keeping with that alternative view, one court has described it as a guilty plea without the benefit of any agreement with the State. *Zapata v. State*, No. 13-08-00632-CR, 2010 WL 196889, at *4 (Tex. App.—Corpus Christi Jan. 21, 2010, pet. ref'd) (mem. op., not designated for publication) ("A cold plea is equivalent to an open plea, which is a plea of guilty without the benefit of an agreement with the state." (footnotes omitted)). Years earlier, in a dissent, Judge Cochran similarly defined an "open plea" as "a guilty plea entered without any previous agreement with the government." *Bowie v. State*, 135 S.W.3d 55, 69 n.11 (Tex. Crim. App. 2004) (Cochran, J., dissenting).

The common denominator of both types of "open plea" is that the defendant pleads guilty without an agreement about the precise punishment he will receive—that is, without a *sentence* bargain (as in, for example, pleading guilty in exchange for a five-year prison term). The two types of "open plea" (as cases use the term) differ, though, in that sometimes the guilty plea itself is a product of a plea bargain, and sometimes it is not. So, unsatisfyingly, although the term "open plea" accurately conveys that a defendant's precise punishment is unresolved, it simultaneously obscures whether the guilty plea itself resulted from a charge bargain.

As noted, *Black's Law Dictionary* does not define "open plea." *Kassube*, 2010 WL 697362, at *2 n.3. But *Black's* does define—under the entry for "plea

7

bargain"—both "charge bargain" and "sentence bargain," two terms used in *Kassube*. *Id.*

### D. Defining "charge bargains" and "sentence bargains"

A charge bargain means this, "*Criminal law.* A plea bargain whereby a prosecutor agrees to drop some of the counts or reduce the charge to a less serious offense in exchange for a plea of either guilty or no contest from the defendant." *Charge bargain*, Black's Law Dictionary (10th ed. 2014).

A sentence bargain is different, "An agreement between a prosecutor and a defendant whereby the defendant promises to plead guilty or no contest to the stated charge in return for a lighter sentence. Usu. a judge must approve the bargain." *Sentence bargain,* Black's Law Dictionary.

### E. Charge bargains, open pleas, article 44.02, and rule 25.2(a)(2)

A sentence bargain falls easily and obviously within article 44.02's and rule 25.2(a)(2)'s clear language. But the State and Harper reached a *charge* bargain, and the record reflects that that is why they and the trial court all saw Harper's plea as "open": his precise punishment had been left unresolved for the trial court to decide.

But the fundamental question is not whether Harper entered an "open plea" but whether article 44.02 and rule 25.2(a)(2) apply to a charge bargain. Our answer is "yes," because that is the answer the court of criminal appeals has given.

Where a charge bargain effectively caps the maximum punishment, the court of criminal appeals has held that a charge bargain falls within rule 25.2(a)(2). *See Shankle*

8

*v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003). Because the charge bargain at issue here does precisely that, we hold that notwithstanding the fact that Harper entered an "open plea"—that is, one in which his precise punishment was left unresolved—article 44.02 and rule 25.2(a)(2) nevertheless apply. *See id.*

### F. No permission to appeal

Because the trial court's initial certification incorrectly reflected that Harper had not entered a plea bargain, we abated the appeal to have the court sign an amended certification. The trial court later ruled that Harper's case was "a plea-bargain case, but matters were raised by written motion filed and ruled on before trial and not withdrawn or waived, and the defendant has the right to appeal."

For us to have jurisdiction over Harper's second and third issues, the court had to have chosen the particular option on the promulgated form that says it "is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal." Because the trial court did not so choose, we hold that we lack jurisdiction over Harper's second issue (ineffective assistance of counsel) and third issue (involuntary plea), both of which were raised post-trial, and dismiss them. *See Griffin v. State*, 145 S.W.3d 645, 648 (Tex. Crim. App. 2004); *Woods v. State*, 108 S.W.3d 314, 315 (Tex. Crim. App. 2003); *Onkst v. State*, No. 03-15-00795-CR, 2017 WL 2628065, at *1–2 (Tex. App.—Austin June 14, 2017, no pet.) (mem. op., not designated for publication); *Osborne v. State*, No. 03-16-00802-CR, 2017 WL 1315342, at *2 (Tex. App.—Austin Apr. 5, 2017, pet. ref'd) (mem. op., not designated for

publication); *Chabera v. State*, No. 01-03-00630-CR, 2004 WL 909243, at *1 (Tex. App.—Houston [1st Dist.] Apr. 29, 2004, no pet.) (mem. op., not designated for publication); *Ozuniga v. State*, No. 04-03-00464-CR, 2004 WL 297989, at *1–2 (Tex. App.—San Antonio Feb. 18, 2004, no pet.) (mem. op., not designated for publication).

Although neither our analysis nor our disposition is novel, we have laid out the problem in some depth so that trial courts, prosecutors, and defense counsel can be more attuned to this jurisdictional issue, which is one that we see fairly frequently.

## IV.    Speedy Trial

In contrast to his second and third issues, Harper's first issue—the alleged speedy-trial violation—addresses a matter raised by written motion filed and ruled on before trial, a situation not requiring the trial court's permission before raising it on appeal. As noted earlier, the trial court's amended certification correctly reflects this. We will therefore address Harper's first issue. *See* Tex. Code Crim. Proc. Ann. art. 44.02; Tex. R. App. P. 25.2(a)(2); *Onkst*, 2017 WL 2628065, at *1–2 (asserting jurisdiction over ruled-on pretrial motions and affirming).[3]

---

[3]Nothing in the clerk's record or reporter's record suggests that Harper, as part of his plea bargain, waived his right to appeal. *See Lundgren v. State*, 434 S.W.3d 594, 599 (Tex. Crim. App. 2014) (holding that when a defendant voluntarily waives the right to appeal to secure the benefits of a plea bargain, a later notice of appeal fails to initiate the appellate process); *Richardson v. State*, Nos. 02-15-00271-CR, 02-15-00272-CR, 2016 WL 6900901, at *4–5 (Tex. App.—Fort Worth Nov. 23, 2016, pet. ref'd) (mem. op., not designated for publication) (holding defendant validly waived his right to appeal; *but see Ex parte De Leon*, 400 S.W.3d 83, 88, 90 (Tex. Crim. App. 2013)

10

## A. The record

From start to finish, Harper's case went from April 5, 2015, to November 30, 2016—or approximately 20 months.

The events of 2015 show the case's start and progression toward a possible trial in early 2016:

- *April 5:* Harper was arrested.

- *April 7:* The trial court appointed William Hull Jr. to represent Harper.

- *May 6:* The State procured its first indictment.

- *July 2:* Hull filed a motion for speedy trial.

- *August 7:* Hull filed a motion for a competency examination.

- *August 7:* The trial court granted the competency-examination motion.

- *August 8:* Harper filed a pro se motion for speedy trial in which he requested, among other relief, a dismissal.

- *August 13:* The complainant filed a non-prosecution affidavit.

- *September 29:* Harper's competency evaluation was completed.

- *October 8:* Harper wrote a letter to the trial judge asking about the status of his speedy-trial motion.

- *November 20:* The State re-indicted Harper.

- *November 20:* Hull filed a motion to dismiss for violating Harper's right to a speedy trial.

---

(holding that trial court's permission to appeal trumped waiver of right to appeal); *Alzarka v. State*, 90 S.W.3d 321, 322–24 (Tex. Crim. App. 2002) (same).

- *December 1:* Hull filed a motion to determine Harper's sanity.

- *December 2:* The trial court signed an order to have Harper's sanity examined.

- *December 3:* The State filed its announcement that it was ready.

- *December 3:* The trial court signed an order setting a pretrial conference for February 18, 2016.

- *December 7:* The State filed a *Brady*-evidence notice asserting that the complainant had filed a non-prosecution affidavit and that the complainant had asserted that she was under the influence of methamphetamine and alcohol at the time of the offense, that she was an MHMR (mental health and mental retardation) patient, that Harper did not stab her, and that she stabbed herself. *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

- *December 21:* The complainant filed another non-prosecution affidavit.

- *December 23:* Harper filed a pro se motion to dismiss for "Indictment Delay." *See* Tex. Code Crim. Proc. Ann. art. 32.01 (West Supp. 2018).

So by 2015's end, Harper's case was set for a pretrial conference on February

18, 2016. In 2016, however, Harper's case took several unexpected turns.

- *February 12:* Harper filed a pro se motion requesting new counsel. Harper stated that he was aware that the complainant had filed a non-prosecution affidavit and that she (the complainant) was upset at Hull because Hull had not yet gotten his case dismissed. Harper complained that Hull knew about the non-prosecution affidavit but did nothing to free him.

- *February 18:* At the pretrial conference, Harper vacillated between keeping Hull and having new counsel; his dilemma was that having new counsel would mean a trial delay, but Harper ultimately asserted that he wanted new counsel. Also at this hearing, the trial court announced that it had just received the report on Harper's competence and sanity and that Harper had been found both competent and sane.

- *February 18:* The trial court appointed Lee Ann Marsh to represent Harper and released Hull as Harper's court-appointed attorney.

- *February 18:* The trial court signed an order setting a pretrial conference for April 14, 2016.

- *March 31:* Marsh, like Hull before her, filed a motion to have Harper's sanity examined.

- *March 31:* The trial court signed an order to have Harper examined for mental illness, mental retardation, or insanity at the time of the offense.

- *April 14:* (The date set for the next pretrial conference in the court's February 18, 2016 order.) The trial court signed another pretrial conference order and scheduled the next pretrial conference for June 16, 2016. The trial court also signed an order appointing Rick Bunch and releasing Marsh as Harper's counsel.

- *June 16:* It is not clear what happened at the June 16, 2016 pretrial conference, but the case did not go to trial.

- *August 18:* At a pretrial hearing, the prosecutor asserted that the previous defense counsel (Hull) had requested DNA testing. Harper personally agreed to pass the case for trial until the DNA results came back.

- *October 24:* Bunch filed a speedy-trial motion to dismiss. The trial court set the motion for a hearing on November 17, 2016.

- *November 17:* The State filed a response to Harper's motion to dismiss.

- *November 17:* The hearing on Harper's motion to dismiss was on the record.

By this point, Bunch asserted that Harper had been in jail 591 days—since April 5, 2015. In response, the prosecutor asserted that the "State ha[d] always been ready."

About the delays, the prosecutor explained that the DNA testing was done at Harper's—not the State's—request because the State thought DNA testing was

13

unnecessary and that Harper had agreed to the delays to get the DNA results. At the hearing, the prosecutor stated that the DNA lab had indicated that it would be another month or two before it would have the results and that at no point had Harper asked the State to scuttle his DNA request.

The prosecutor further explained that trial settings were passed twice because Harper wanted to fire his attorney and that each time a new attorney got appointed, the new attorney had to get up to speed and would file various new motions.

In February 2016, the prosecutor had tried to negotiate with Hull, but the negotiations went nowhere because Harper insisted that the State simply dismiss his case. And Hull—not the State—had the case taken off the trial docket in 2015 while everyone awaited the competency evaluation.

On November 17, summing up her position, the prosecutor said: "I believe there has been very little delay that is attributable to the State[,]" and added, "I believe almost all of the delay in this case is attributable to the Defendant . . . from firing his attorneys, from multiple repetitive psychological evaluations, and then requests for testing that, in my opinion, would have no bearing on the case."

After the State asserted that it was willing to proceed without the DNA evidence, Bunch, with Harper's express approval, also agreed to proceed without the DNA evidence.

The trial court set the case for trial on November 28 and denied the motion to dismiss.

- *November 28:* At the pretrial hearing, the trial court again denied Harper's motion to dismiss for violating his right to a speedy trial and informed the parties that it was calling a jury on November 29, 2016.

- *November 29:* On the record, the parties acknowledged that the State had agreed to dismiss the first and second enhancement paragraphs in exchange for Harper's guilty plea. Harper signed a confession. The record shows that the State received the DNA results—which showed that Harper's, the complainant's, and a third person's DNA were on the knife used to stab the complainant—and shared them with Bunch.

- *November 29:* The court heard punishment evidence.

- *November 30:* The court sentenced Harper.

**B. Standard of Review**

The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial. *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); *Orand v. State*, 254 S.W.3d 560, 565 (Tex. App.—Fort Worth 2008, pet. ref'd). In determining whether this right has been violated, courts weigh and balance four factors: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right; and (4) prejudice to the defendant resulting from the delay. *See Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S. Ct. 2182, 2191–93 (1972) (creating test under federal constitution); *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008) (stating that test under Texas constitution uses same four *Barker* factors); *see also State v. Jones*, 168 S.W.3d 339, 346–52 (Tex. App.—Dallas 2005, pet. ref'd) (applying *Barker* factors to motion to dismiss for alleged speedy-trial violation).

15

Once the *Barker* test is triggered, courts analyze the claim by weighing the strength of the four factors and balancing their relative weights in light of both the State's and the defendant's conduct. *Cantu*, 253 S.W.3d at 281. No one *Barker* factor is a necessary or sufficient condition to finding a speedy-trial violation; rather, the factors are related, and courts should evaluate them in conjunction with any other relevant considerations. *Id.*

We apply a bifurcated standard of review when reviewing a trial court's decision on a speedy-trial claim. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). We review the trial court's factual determinations for an abuse of discretion and review de novo how it applied the law to the facts. *Id.*

## C. Discussion

### 1. Length of delay: presumptively unreasonable

We measure the delay's length from the time the defendant is arrested or formally accused. *United States v. Marion*, 404 U.S. 307, 321 n.12, 92 S. Ct. 455, 463 n.12 (1971). Unless the delay was long enough to be presumptively prejudicial, no further inquiry is necessary. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. Generally, depending on the charged crime's nature, courts have found post-accusation delay presumptively prejudicial when it approaches one year. *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992); *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

Here, the delay was about a year and eight months, which is presumptively unreasonable. *See Shaw*, 117 S.W.3d at 889. We will thus analyze the other *Barker* factors.

### 2. Reasons for the delay: attributable to Harper

If a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1192 (1995). Different weights are assigned to different reasons. *Munoz*, 991 S.W.2d at 822. A deliberate attempt to delay a trial, for example, is weighed heavily against the State, while more neutral reasons, such as negligence or overcrowded dockets, are still weighed against the State but less heavily. *Id.* If the record is silent regarding the reason for the delay, it weighs against the State but not heavily, because courts do not presume that the State has tried to prejudice the defense. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *Zamorano*, 84 S.W.3d at 649–50.

Harper complains that the State deliberately delayed his trial by re-indicting him on November 20, 2015, and adding only enhancement allegations, something that he argues could have been accomplished with a notice and that did not require a re-indictment. *See Brooks v. State*, 957 S.W.2d 30, 33–34 (Tex. Crim. App. 1997). We disagree that re-indicting Harper delayed his trial. As noted above, Harper's competency and insanity issues prevented the case from going to trial in 2015, so the

manner in which the State added the enhancements in November 2015 played no part in any delay.

The delays after 2015 were similarly attributable to Harper. The February 2016 trial setting was passed because he wanted (and obtained) different counsel—Marsh for Hull. The April 2016 trial setting appears to have been passed for the same reason—this time Harper got Bunch for Marsh. The June 2016 trial setting appears to have been passed for DNA-result purposes, and the August 2016 setting unquestionably was passed for DNA reasons. Harper, not the State, wanted the DNA testing. In October 2016, the parties were still waiting on the DNA results, and it was only then that Harper agreed to proceed without them, so the trial was reset for November 2016 and was resolved at that time.

Because the delays were attributable to Harper, this factor weighs against him.

### 3.  The defendant's assertion of his right: weighs in Harper's favor

The third *Barker* factor that a trial court must consider is the defendant's assertion of his right to a speedy trial. 407 U.S. at 531, 92 S. Ct. at 2192; *Munoz*, 991 S.W.2d at 825. A defendant is responsible for asserting or demanding this right. *Munoz*, 991 S.W.2d at 825. An accused's repeated (but futile) requests for a speedy trial weigh heavily in favor of dismissing the charge. *See Murphy v. State*, 280 S.W.3d 445, 454 (Tex. App.—Fort Worth 2009, pet. ref'd).

Hull filed Harper's first speedy trial motion less than three months after his incarceration. Harper himself filed a pro se motion slightly more than a month later

18

and asked about its status some two months after filing the motion. Hull then filed a motion to dismiss in November 2015, more than seven months after Harper's arrest. Harper himself filed a pro se motion to dismiss in December 2015. After a hiatus spanning several months, Bunch moved to dismiss in October 2016. The trial court denied the motion on November 28, 2016. Harper unquestionably asserted his right, and this factor weighs in his favor.

### 4. Prejudice to the defendant resulting from the delay: no prejudice

The final *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. *Cantu*, 253 S.W.3d at 285. Generally, three interests are considered in determining prejudice: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. But proof of actual prejudice is not required when the delay is excessive, because such a delay "presumptively compromises the reliability of a trial in ways that neither party can prove or even identify." *Shaw*, 117 S.W.3d at 890. If an accused can show prejudice, the burden shifts to the State to prove that the accused suffered no serious prejudice beyond that which ensued from ordinary and inevitable delay. *Munoz*, 991 S.W.2d at 826.

Here, Harper appears to have been adamant about a speedy trial because he knew that the complainant was either uncooperative or had filed non-prosecution

19

affidavits. But an affidavit of non-prosecution is not a "get-out-of-jail-free card." Such an affidavit is nothing more than another potential evidentiary piece, and the State can pursue a conviction notwithstanding the affidavit. *See Hill v. State*, 392 S.W.3d 850, 854 (Tex. App.—Amarillo 2013, pet. ref'd). A complainant's non-prosecution affidavit is comparable to a recantation, something a factfinder is fully entitled to disbelieve or disregard. *See Duarte v. State*, No. 13-16-00198-CR, 2017 WL 5184836, at *4 (Tex. App.—Corpus Christi Nov. 9, 2017, no pet.) (mem. op., not designated for publication).

On this record, the State still had (1) the complainant's 911 call in which she identified "Stanley" as her attacker, (2) her statements to the police that Harper attacked and stabbed her with a knife, and (3) various means to impeach her after-the-fact contention that she had stabbed herself, such as her initial reluctance to cooperate with the police and her later admission that she used drugs. We note that the complainant testified at Harper's punishment hearing, but despite her attempts to help him, the trial court assessed a 20-year sentence—the maximum available under the charge bargain. We can conclude only that she did not come across as particularly persuasive.

Nor has Harper persuaded us that he suffered prejudice. If anything, the delays worked to his benefit. The initial delays allowed, at his counsel's requests, mental health professionals to evaluate Harper's sanity at the time of the offense and his competence to stand trial. The later delays allowed Harper to change counsel twice

20

and to get DNA evidence. And the State's plea-bargain offer, which significantly reduced Harper's punishment range, did not come until the very last setting. The record shows that Harper had 19 prior convictions, four of which were felonies. On this record, the State's waiving the enhancement allegations was no small concession.

### 5. Holding

Although Harper asserted his right to a speedy trial, he worked at cross-purposes. Early delays were attributable to questions regarding his competency to stand trial and then to his sanity when committing the offense. Harper's twice changing his counsel and his insisting on having DNA evidence thereafter caused additional delays. These postponements were consistently designed to benefit or accommodate Harper, not the State. The record also supports the conclusion that what Harper actually sought was to avoid trial entirely by getting his case dismissed based on the complainant's non-prosecution affidavits. Harper, not his counsel, was the first one to seek a dismissal in his August 2015 pro se motion for speedy trial, and in his February 2016 pro se motion to appoint new counsel, Harper made it clear that he wanted new counsel because his attorney had not gotten his case dismissed, not because his counsel had failed to get his case tried. We are reluctant to rule that Harper was denied his constitutional right on a record that suggests that he wanted no trial at all, much less a speedy one. *See Barker*, 407 U.S. at 536, 92 S. Ct. at 2194–95. Finally, the delay worked to Harper's benefit: the plea-bargain he agreed to capped his maximum sentence at five years less than what his minimum sentence would have

been without the plea bargain if he had gone to trial and been convicted. *See id.* at 530–32, 92 S. Ct. at 2191–93. We hold that the trial court neither abused its discretion factually nor erred legally by denying Harper's motion to dismiss. *See Zamorano*, 84 S.W.3d at 648; *Munoz*, 991 S.W.2d at 821.

We overrule Harper's first issue.

## V.    Conclusion

Having overruled Harper's first issue and dismissed his second and third issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Publish

Delivered:  January 10, 2019

22