

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00159-CR

_____

CHRISTOPHER O. FRANKLIN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1579889D

---

Before Sudderth, C.J.; Bassel and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

In a single point complaining of the admission of certain testimony, Appellant Christopher O. Franklin appeals the trial court's deferring adjudicating his guilt and imposing ten years' community supervision. Because Franklin failed to properly preserve a portion of his argument and because we cannot conclude that the trial court erred by admitting the testimony in question, we affirm.

## Background

In January 2019 during an altercation with another man, Franklin threw a brick that hit his one-year-old son C.F. and fractured his skull.[1] Franklin later pleaded guilty to aggravated assault with a deadly weapon under a charge bargain[2] with the State and asked the trial court to assess his punishment.

---

[1]The examining nurse practitioner, Donna Wright, described C.F.'s scraped and bruised face and noted that his right eye was so swollen that C.F. could not open it. A CT scan revealed a fractured orbital bone above his eye and bleeding behind his eye, raising concerns of vision damage. According to Wright, because children's bones are more pliable by nature than adults', a fracture like that of C.F.'s orbital bone requires a "significant amount of force." Due to the seriousness of the injury, C.F. was admitted to the hospital for overnight observation.

[2]The State waived two counts in exchange for Franklin's guilty plea to the remaining count of aggravated assault—this type of bargain is a charge bargain, leaving "his precise punishment . . . unresolved for the trial court to decide." *Harper v. State*, 567 S.W.3d 450, 455 (Tex. App.—Fort Worth 2019, no pet.). In our initial screening of this case, we notified the parties of our concern that the certification of the right to appeal appeared defective because it did not accurately reflect the record. The plea admonishments reflect a plea recommendation of "open plea to judge with PSI (waive counts 1 and 2)." The deferred-adjudication order included the same statement. Additionally, at the punishment hearing, the trial court made clear its understanding

At the punishment hearing, the trial court admitted a presentence investigation report (PSI) without objection by Franklin. The PSI described the circumstances of the crime and Franklin's remorse. It also contained C.F.'s mother's descriptions of Franklin in the past as being "very aggressive," having a drinking problem, and doing drugs. Also part of the PSI were Mother's allegations of domestic violence by Franklin, including an allegation that he had choked her after C.F.'s birth. The PSI stated that "[t]he record . . . noted a violent relationship between him and [Mother]."

Only one witness testified at the punishment hearing: Donna Wright, the pediatric nurse practitioner from Cook Children's Medical Center who treated C.F. on the night of the incident. Wright explained her role as a part of Cook's CARE team, a

---

that the State had agreed to modify its charge to include the reckless aggravated-assault charge in exchange for Franklin's guilty plea.

Despite these statements in the record, the trial court's certification stated that this case was not a plea bargain case and Franklin retained his right of appeal. Indeed, in the plea paperwork signed by Franklin the provisions denoting a waiver of the right to appeal had been crossed out.

Because this is a charge-bargain case, Franklin only has the right to appeal with the trial court's permission. *See* Tex. R. App. P. 25.2(a)(2) (listing the limited circumstances under which a criminal defendant in a plea-bargained case may appeal). In response to our request for an amended certification, the trial court filed a second certification that mirrored the first by stating that this "is not a plea-bargain case, and the defendant has the right of appeal." For the reasons discussed above, we disagree— this is a charge-bargain case. But in light of our review of the record, we have determined that the trial court impliedly granted Franklin permission to appeal. *See, e.g., Craven v. State*, Nos. 02-11-00089-CR, 02-11-00090-CR, 2012 WL 2036449, at *1 (Tex. App.—Fort Worth June 7, 2012, pet. ref'd) (mem. op., not designated for publication).

specialty department that treats children who may have been victims of abuse, neglect, or drug exposure. She explained that due to C.F.'s tender age and his being minimally verbal, she interviewed Mother for their history. During that interview, Wright collected information about their "social history," meaning Mother's relationship with Franklin, to evaluate whether C.F. would be returning to a safe environment upon release and to determine if there had been "any other type of possible [past] trauma to [the] child." According to Wright, she asked about any past violence because she often examined children who had old, unreported fractures or injuries—injuries that may be relevant to a medical diagnosis.

After the trial court overruled Franklin's hearsay and Confrontation-Clause objections to testimony of any domestic violence history, Wright testified that Mother had told her that "when dad was with the baby . . . he screams and cusses at the baby and grabs him hard." According to Wright, Mother had "described two incidences . . . about her being choked and pushed to a wall when she was pregnant [and] . . . . that he grabbed her and choked her after [C.F.] was born."

After considering the PSI and Wright's testimony, the trial court deferred adjudicating his guilt and placed him on community supervision for ten years with a $1,000 fine.

## Discussion

In his single point on appeal, Franklin argues that the trial court erred by allowing Wright to testify to Mother's reports of three domestic violence incidences against her,

4

two of them taking place before C.F. was born and the third taking place after his birth. Specifically, Franklin argues that the testimony was impermissible hearsay and violated his Confrontation-Clause rights.

## I. Forfeiture

In response, the State argues that Franklin forfeited his argument by agreeing to the PSI's admission, which contained similar evidence of Franklin's prior assaults of Mother. As it relates to the allegations of his assault of Mother after C.F.'s birth, we agree.

A party must object each time objectionable evidence is offered. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). Here, Franklin failed to object to the admission of the PSI report, which reported Mother's allegation of the post-birth assault and the violent nature of their relationship. Thus, as to the post-birth assault, Franklin has forfeited his arguments against Wright's testimony about the same matter. *See, e.g.*, *Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003). We therefore overrule Franklin's point as it relates to the allegation of post-birth assault.

## II. Pre-birth Assaults

We turn to Wright's testimony about Mother's allegations that Franklin choked her and pushed her into a wall twice while she was pregnant with C.F. He argues that the testimony constitutes testimonial hearsay that violates the Confrontation Clause

5

**A. Applicable Law**

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Tex. R. Evid. 802. It is generally inadmissible, but there are certain exceptions to the hearsay bar, including the statement-made-for-medical-diagnosis-or-treatment exception. Tex. R. Evid. 802, 803(4). This exception includes statements made for and reasonably pertinent to medical diagnosis or history that describe medical history, past or present symptoms or sensations, their inception, or their general cause. *Id.* We review the trial court's ruling on a hearsay objection for an abuse of discretion, and we will affirm the trial court's decision unless it was so clearly wrong as to lie outside the zone of reasonable disagreement. *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Out-of-court statements may be subject not only to hearsay objections but also to Confrontation-Clause objections. *Cf. United States v. Cain*, 615 F.2d 380, 381–82 (5th Cir. 1980) (explaining that a statement admissible under a hearsay exclusion may still violate the Confrontation Clause). The Confrontation Clause, contained in the Sixth Amendment, provides that in all criminal prosecutions, the accused shall have the right to be confronted by the witnesses against him. U.S. Const. amend. VI. The clause applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364 (2004). We review a trial court's determination of a Confrontation-Clause objection de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

6

The court of criminal appeals has defined three categories of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent"; (2) "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and" (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Regarding this third category, a statement is not testimonial if the circumstances show that the primary purpose of the interrogation was not to establish or prove past events potentially relevant to later criminal prosecution. *Id.*; *see also Ohio v. Clark*, 576 U.S. 237, 246, 135 S. Ct. 2173, 2181 (2015) (explaining that statements to individuals who are not law enforcement "are much less likely to be testimonial").

### B. Application

Mother's statements to Wright that Franklin had choked her twice before C.F. was born are neither inadmissible hearsay nor violative of the Confrontation Clause if they were made for the primary purpose of medical treatment, not for criminal-interrogation purposes. *See* Tex. R. Evid. 803(4); *Langham v. State*, 305 S.W.3d at 576. Based on the record before us, we hold that Mother's statements were made for the primary purpose of medical treatment.

We and our sister courts have held similarly in comparable situations. *See Bohanna v. State*, No. 14-19-00936-CR, 2021 WL 1917663, at *5 (Tex. App.—Houston [14th

7

Dist.] May 13, 2021, pet. ref'd) (mem. op., not designated for publication); *Murray v. State*, 597 S.W.3d 964, 973–74 (Tex. App.—Austin 2020, pet. ref'd); *Reed v. State*, 497 S.W.3d 633, 638 (Tex. App.—Fort Worth 2016, no pet.). For example, in *Bohanna*, the court held that testimony by sexual-assault nurse examiners offered during the punishment phase about examinations performed on assault victims who were not the complainant did not violate the defendant's confrontation rights. 2021 WL 1917663, at *5. The reviewing court noted that to hold otherwise "ignores the nurses' testimony" as to their involvement in the examinations and to their obtaining of medical histories from each complainant "for the purpose of diagnosis and treatment":

> For example, Ricks testified that the history she took from Amy provided "a background of the patient, things that we may need to look for while taking care of them." Ricks also explained that the history might reveal issues that would help them while performing the examination and while taking care of the patient in the future. Finally, when asked what her obligation was when seeing a patient, Ricks responded that it was "to take care of the patient."

*Id.; see also Murray*, 597 S.W.3d at 974 (holding similarly in light of nurse's testimony that she collected a patient history "for diagnosis and treatment" and to guide "what she need[ed] to look for and . . . address"); *Reed*, 497 S.W.3d at 638 (holding similarly); *cf. Taylor v. State*, 268 S.W.3d 571, 581–86, 591 (Tex. Crim. App. 2008) (examining caselaw addressing statements by child-abuse victims to physicians during examinations identifying the abuser as reasonably pertinent to treatment, particularly to ensure the child's safety).

8

Wright explained that part of her medical examination of C.F. was to take a "social history" of Mother's relationship with Franklin, which, in turn, was relevant to evaluating C.F.'s current injuries, discovering any past unreported injuries that may need treatment, gauging whether C.F. would be returning to a safe environment upon release, and determining whether there had been "any other type of possible [past] trauma to [C.F]."

In this record, there is no indication that Wright's questioning of Mother was made for the primary purpose of uncovering information for use in a later criminal prosecution. Rather, the record shows that it was made for the purpose of medical treatment or diagnosis. We therefore cannot conclude that Wright's testimony constituted inadmissible testimonial hearsay.

## III. Harmless Error

A constitutional error such as a confrontation-clause violation warrants reversal unless we determine beyond a reasonable doubt that the error was harmless, i.e., that the trial court's ruling did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a). In applying this harmless-error test to the facts here, the primary question we must answer is whether there is a "reasonable possibility" that the error might have contributed to the punishment. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). Even if we were to hold that the admission of her testimony to the pre-birth assaults was error, it would not rise to the level of reversible error, even

9

under the constitutional-error standard applied to violations of the confrontation clause. *See, e.g., Davis v. State*, 203 S.W.3d 845, 849 (Tex. Crim. App. 2006).

The constitutional-error standard requires us to evaluate the entire record in a neutral manner, not in the light most favorable to the prosecution. *Love v. State*, 543 S.W.3d 835, 846 (Tex. Crim. App. 2016), *abrogated on other grounds by Holder v. State*, No. PD-0025-21, 2022 WL 3025398, *2 (Tex. Crim. App. Feb. 2, 2022). Looking at the evidence in that light, we "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment." *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). Other factors to consider may include, if applicable, the nature of the error, the extent that the State emphasized it, its probable collateral implications, and how a juror would probably weigh the error. *Snowden*, 353 S.W.3d at 822.

This was a bench trial on punishment following Franklin's guilty plea to the aggravated assault of his then-one-year-old son with a deadly weapon, a brick. Franklin did not object to the admission of the PSI, which included Mother's general allegation that their relationship had been violent and her specific allegation that he had choked her after C.F. was born. Wright's testimony as to Mother's allegations of pre-birth

assaults were arguably cumulative of that evidence and added little weight to the evidence already admitted without objection. *See Davis*, 203 S.W.3d at 855 (holding cumulative evidence of defendant's attempts to strangle victim with a rope were cumulative of other evidence).

In any event, there is no indication that the allegations of pre-birth assaults on Mother in particular contributed to the trial court's assessment of punishment. In explaining its rationale for the deferred-adjudication sentence, the trial court never mentioned the allegations of prior abuse against Mother but, rather, emphasized the violent nature of the crime itself. The trial court described Franklin's actions as "absolutely detestable" and stated, "[B]y throwing a rock through the window because you're ticked off at your former significant other as well as her new boyfriend [sic] . . . , I don't care what it does to you, but it certainly affected [C.F.] and how you dealt with the problem, and that is not acceptable." The trial court stressed that it had a wide range of punishment—two to twenty years' incarceration—at its disposal, but that it was cognizant of the fact that a long prison sentence would deprive C.F. of the opportunity to have a father in his life. The latter sentiment echoes Mother's concerns as expressed in the PSI and her statements that Franklin was making an effort to be a father and to help her raise C.F. [3]

---

[3]Mother described Franklin as having "changed" and no longer as aggressive, and she told the probation officer that he had been trying to help her with C.F. and had been visiting them. Mother expressed that she did not wish Franklin to be sent to

11

We have held that the admission of Mother's statements of the pre-birth choking incidents did not constitute inadmissible hearsay[4] or violate the confrontation clause. But even if we had held otherwise, any such error in their admission was harmless. *See Davis*, 203 S.W.3d at 853–56.

Having so held, we overrule the remainder of Franklin's point on appeal.

## Conclusion

Having overruled Franklin's sole point on appeal, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 17, 2022

---

prison but did hope that he would receive treatment or education to understand what had happened and why.

[4]This is likewise true applying the nonconstitutional-error standard that is applicable to erroneous admission of hearsay. *See* Tex. R. App. P. 44.2(b).