

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00327-CR
No. 02-24-00350-CR
No. 02-24-00351-CR

_____

MITCHELL EDWARD ARTERBERRY III, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court Nos. 1813826, 1757559, 1757561

_____

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

In a combined proceeding, the trial court revoked Appellant Mitchell Edward Arterberry III's deferred adjudication community supervision in two cases (the deferred cases) and sentenced him for two offenses in another case (the new case). In two points, Arterberry challenges the trial court's decision to proceed to adjudication in the deferred cases and the sentencing in the new case. Because we hold that the trial court had sufficient evidence to support its decisions, we will affirm.

## Background

### I. Arterberry's Deferred Adjudication

In June 2023, in separate cause numbers, Arterberry was placed on 60 months' deferred adjudication for possession of less than one gram of cocaine and for unlawful possession of a firearm. His community supervision conditions required, among other things, that he not consume alcohol, not possess a firearm, and not commit any new offenses. Less than three months later, on September 17, 2023, Arterberry committed two new offenses: felony driving while intoxicated and unlawful possession of a firearm. The events of that day resulted in the charges in the new case and the State's filing a petition to proceed to adjudication in each deferred case (the original petitions).

The State's original petitions set out six community supervision violations, five of which related to the new offenses. The State alleged that on September 17, 2023, Arterberry had (1) possessed a firearm, (2) consumed alcohol, (3) committed the

offense of unlawful possession of firearm by a felon, (4) committed the offense of driving while intoxicated third or more (felony DWI), and (5) refused to provide a breath sample as requested by a peace officer. The State also alleged that Arterberry had not completed his community-service restitution hours for August 2023.

On March 12, 2024, the trial court held a plea hearing at which Arterberry pled true to the allegations in the State's original petitions and guilty to the new offenses, and the trial court accepted his pleas. In each case, Arterberry signed a "Judicial Confession" admitting to committing each act alleged by the State. Each written plea admonishment included the punishment that the State would recommend if Arterberry returned to court on July 18.[1] We do not have a record of the July 18 hearing, if one was held. But according to the trial court, "on that date," Arterberry "changed his mind and requested a Presentence Investigation Report [PSI], changing the terms and conditions of his negotiated plea agreement into an open plea with respect to sentencing."

In August 2024, Arterberry submitted a diluted urine sample for drug testing, and the State filed amended petitions to proceed to adjudication to add this violation.

---

[1]The written plea admonishment included a punishment recommendation but also stated that the punishment agreement was an "open plea." *See Harper v. State*, 567 S.W.3d 450, 454 (Tex. App.—Fort Worth 2019, no pet.) (noting the ambiguity of the term "open plea" but stating that the term refers to instances when a defendant pleads guilty without an agreement about the precise punishment to be received). The trial court's findings of fact more accurately describe the plea agreement as a sentencing agreement. *See id.*

## II. The Revocation Hearing

The trial court held a combined hearing in the new case and the deferred cases on September 3, 2024 (the September hearing). The trial court first took judicial notice "of the contents of [its] files in these cases, as well as all hearings over which [the court had] personally previously presided."

The trial court then summarized the proceedings thus far. But in reciting the allegations to which Arterberry had already pled true and which the trial court had accepted, the trial court referenced "the State's applicable *first amended* petitions to adjudicate." [Emphasis added.] However, at the time of the March 12 and (July 18 hearing, if there was one), the State had not yet filed its amended petitions, and Arterberry had not yet committed the seventh probation violation that the State had added in its amended petitions. Thus, Arterberry could not have pled true to that violation at the March 12 hearing (or the July 18 hearing, if there was one). Nevertheless, Arterberry confirmed that the trial court had "appropriately stated the juxtaposition of the status" of the cases.

After the trial court's summary of the prior proceedings, the State introduced the PSI report, and the trial court admitted it without objection "for all purposes." The PSI report contained facts relating to all seven violations that the State had alleged.

The PSI stated that, according to law enforcement, on September 17, 2023, the Tarrant County Sheriff's Office received a report of someone driving a vehicle the

4

wrong way down a road before parking the vehicle. A deputy arrived at the address and found the car running and three people sleeping or passed out inside. Arterberry was in the driver's seat. Arterberry did not respond to the deputy's voice, shoulder tapping, or sternum rubs. Arterberry eventually woke up long enough for the deputy to remove him from the vehicle but fell back asleep after being placed on the ground. By the time EMS arrived, Arterberry was awake and able to stand, and he was arrested for driving while intoxicated. A tow truck was called to collect the vehicle, and an inventory revealed a loaded handgun under the driver's seat. Arterberry told deputies that he would not provide a blood specimen, but deputies got a blood-draw warrant and took him to the hospital. Lab testing showed that his blood-alcohol content was 0.17. The PSI further stated that Arterberry had not worked his community-service hours in August 2023.

The PSI included Arterberry's version of events as told to the PSI interviewer. Arterberry denied driving that day and denied that the firearm was his, but he admitted that he had been drinking. Arterberry said that he was not interested in participating in a residential alcohol-treatment program if one was required to remain on community supervision.

After the trial court admitted the PSI, Arterberry put on two witnesses, but neither of them testified about the facts of the alleged community service violations or new offenses. After hearing the evidence and the attorneys' arguments, the trial court stated that it had "previously accepted [Arterberry's] pleas of true to the allegations in

5

the State's *First Amended Petition* to Proceed to Adjudication in" the deferred possession-of-a-controlled-substance case, and the trial court "[found] those allegations to be true" and adjudicated him guilty in that case. [Emphasis added.] In the other deferred case, the court stated that it had "previously accepted [Arterberry's] pleas of true to Paragraphs One, Two, Three, Four, Five, Six, *and Seven* of the State's *First Amended Petition*"; found the allegations to be true; and adjudicated him guilty. [Emphasis added.] The trial court further found Arterberry guilty of the new offenses and sentenced him in each case.

## III. Abatement on Appeal

After Arterberry appealed, we abated for the trial court to make findings to clarify (1) the violations to which Arterberry had pled true, (2) the pleas accepted by the trial court, and (3) the allegations that the trial court found to be true at the September hearing. The trial court found that it had accepted Arterberry's pleas to the State's original petitions at the March hearing. The trial court further found that at the September hearing, it had made misstatements when it said that it had accepted Arterberry's pleas of true to the State's *amended* petitions at the March hearing, when it said that the court "now finds *those* allegations to be true" in both deferred cases, and when it said that it had found true the seventh violation alleged in the amended petitions. [Emphasis added.] The trial court further found that its decisions to adjudicate guilt and its sentencing in the deferred cases were not contingent on its finding about the seventh violation. Rather, the trial court's sentencing decisions in

6

those cases "were heavily—and primarily—influenced by [Arterberry's] plea of 'true' to having possessed a firearm on September 17, 2023" and committing a new felony offense that day—both in violation of his conditions of community supervision—and by "the factual circumstances surrounding the events of [that day], including the possibility that [Arterberry's] child had easy access to [Arterberry's] firearm during a time when [he] admits he was intoxicated."[2]

After receiving the supplemental record with the trial court's findings, we reinstated the appeal.

**Standard of Review**

We review for abuse of discretion a trial court's decision to adjudicate guilt and revoke community supervision. *Caballero v. State*, 706 S.W.3d 562, 565–66 (Tex. App.—Austin 2024, no pet). A trial court may revoke a defendant's community supervision and proceed to adjudication if the State proves by a preponderance of the evidence a single violation of the defendant's community-supervision conditions. *Hacker v. State*, 389 S.W.3d 860, 864–66 (Tex. Crim. App. 2013); *Caballero*, 706 S.W.3d at 565–66. "Regardless of the reasons given by the trial court for revoking community supervision, if evidence supports the court's decision[,] it will not be disturbed on

---

[2]According to the PSI, Arterberry was the primary caretaker for his child and picked up the child from school most days, and when he was arrested in 2022 for the deferred offenses, he was intoxicated, armed, and with his young son. Before his arrest that day, he had been at a restaurant, and a restaurant host had reported seeing Arterberry offer his firearm to his son.

appeal." *Caballero*, 706 S.W.3d at 567; *HowardJohnson v. State*, Nos. 02-15-00148-CR, 02-15-00150-CR, 2015 WL 7950715, at *4 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op., not designated for publication).

Further, there is no requirement that the defendant enter a plea to the alleged violations. *Detrich v. State*, 545 S.W.2d 835, 837 (Tex. Crim. App. 1977) (holding that "failure to enter a plea by probationer does not render the proceeding a nullity"); *Ramirez v. State*, No. 02-22-00083-CR, 2023 WL 5114191, at *1 n.1 (Tex. App.—Fort Worth Aug. 10, 2023, no pet.) (mem. op., not designated for publication) ("In the context of a revocation proceeding, [the defendant's] failure to enter a plea is immaterial."); *Spencer v. State*, Nos. 02-21-00240-CR, 02-22-00006-CR, 2022 WL 17173133, at *4 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op., not designated for publication) (citing *Detrich*).

## Discussion

In Arterberry's first point, he argues that the revocations are void because they were predicated upon pleas of true that did not exist. He contends that "[w]ithout a plea, [he] did not waive his due[-]process rights, nor did he admit guilt, leaving no evidence to support the conviction."[3]

---

[3]Nothing in the appellate record shows that Arterberry formally withdrew his true pleas to the first six violations alleged by the State or his judicial confessions to those violations. Indeed, at the September hearing, the trial court and the parties expressed their agreement that they were proceeding on Arterberry's true pleas, at least to the original six violations. Arterberry cites no authority addressing the effect of the State's amending its petitions after the trial court had accepted his pleas.

8

Arterberry does not argue that he did not receive notice of the claimed violations, that he was not given a chance to present evidence, or that other standard due-process requirements for revocation of deferred-adjudication community supervision were not met.[4] *See Bonakies*, 2024 WL 2854773, at *2 (listing due-process requirements in probation revocation proceedings). His only argument is that he did not enter new true pleas after the State filed amended petitions, so no evidence supports the trial court's decisions to proceed to adjudication. We do not have a record of any hearing other than the September hearing, so we do not know if evidence of Arterberry's violations was presented at any previous hearing. However, at the September hearing, the trial court had before it evidence to support its decisions.

The trial court was considering not only the deferred cases, but also Arterberry's new case. The same evidence that the trial court considered in finding

However, for purposes of Arterberry's first point, we will accept his implied argument that the State's amending its petitions worked to void his already-accepted pleas of true to the first six violations. Further, although Arterberry's brief does not discuss the judicial confessions in the deferred cases, we will accept his implied argument that those judicial confessions were also voided by the State's filing amended petitions, and we will not consider the effect of Arterberry's agreeing with the trial court at the September sentencing hearing that he had pled true to the State's allegations.

[4]To the extent that Arterberry's brief attempts to raise any due-process argument regarding notice or the hearing procedure, he has not preserved it. *See Bonakies v. State*, No. 02-23-00305-CR, 2024 WL 2854773, at *2 (Tex. App.—Fort Worth June 6, 2024, pet. ref'd) (mem. op., not designated for publication); *see also Nolan v. State*, No. 02-24-00208-CR, 2025 WL 285357, at *4 (Tex. App.—Fort Worth Jan. 23, 2025, no pet.) (mem. op.).

9

Arterberry guilty of the new offenses could also be considered by the trial court in determining whether Arterberry had violated his community-supervision conditions by committing new offenses. *See Barrientez v. State*, 500 S.W.2d 474, 475 (Tex. Crim. App. 1973); *Sheppard v. State*, 634 S.W.2d 951, 952 (Tex. App.—Fort Worth 1982, no pet.); *see also Henson v. State*, 650 S.W.2d 432, 433–34 (Tex. App.—Houston [14th Dist.] 1982), *aff'd*, 683 S.W.2d 702 (Tex. Crim. App. 1984). Thus, we consider that evidence to see if it is sufficient to establish any of the violations alleged by the State in the deferred cases.

First, at the beginning of the hearing, the trial court took "judicial notice of the contents of [its] files in these cases." The clerk's record in the new case includes the judicial confession that Arterberry had signed, and in that document, Arterberry admitted that he had committed the felony DWI and unlawful-firearm-possession offenses as alleged in the indictment. The judicial confession was sufficient evidence to support Arterberry's guilty plea to the new offenses. *See Giddings v. State*, No. 02-19-00372-CR, 2021 WL 2373462, at *3 (Tex. App.—Fort Worth June 10, 2021, pet. ref'd) (mem. op., not designated for publication). Arterberry has not argued that the judicial confession was not sufficient to support his guilt in the new case or that the trial court could not consider it as evidence of the community-supervision violations that are based on the same acts as the new offenses. The judicial confession was evidence that Arterberry had committed two new offenses.

10

Second, the trial court admitted the PSI "for all purposes." *See id.* at *4 (considering PSI as evidence to support guilty plea). The PSI included a report about what had happened on September 17, including that Arterberry had been found passed out in a parked car with the engine running, had refused to give a blood sample, had a blood-alcohol content of 0.17, and had a loaded firearm in the car under the driver's seat. Arterberry does not argue on appeal that the trial court could not have considered the PSI as evidence of his guilt of the new offenses or of the violations alleged in the State's amended petitions in the deferred cases, and he did not object to the admission of the PSI before the trial court had adjudicated him in the new or deferred cases. *See id.*; *Renteria v. State*, No. 01-06-00677-CR, 2007 WL 3038041, at *1 (Tex. App.—Houston [1st Dist.] Oct. 18, 2007, no pet.) (mem. op., not designated for publication); *Hollin v. State*, 227 S.W.3d 117, 123 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *cf. Reyes v. State*, 361 S.W.3d 222, 227–28 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Hollin* and holding complaint about trial court's consideration of PSI must be preserved).

The record further reflects that the trial court's files contained Arterberry's community-supervision conditions in the two deferred cases, which included requirements that Arterberry "not possess, transport, or purchase any firearms[ ] or ammunition"; "not use, possess, or consume any alcohol"; and not "[c]ommit [an] offense against the laws of this State." In the State's original and amended petitions, it alleged that Arterberry had violated those same three conditions. Evidence that

11

Arterberry committed the unlawful-firearm-possession and felony DWI offenses was also proof that he had violated those three conditions.

We decline to hold that the trial court could consider evidence that Arterberry was guilty of the new offenses but not also consider the same evidence to determine whether he had violated his community-supervision conditions. Because the trial court had sufficient evidence from which it could find that Arterberry had violated a community-supervision condition alleged in the State's petitions, the trial court did not abuse its discretion by revoking his community supervision and proceeding to adjudication. We overrule Arterberry's first point.

Under Arterberry's second point, he argues that the new cases require reversal because they were rendered with consideration of the adjudication of the deferred cases. He asserts that because the trial court considered his "non-existent plea of true to the revocations" in sentencing, "the convictions and facts of those cases were part of the sentencing equation," as were the details of the offenses as set out in the PSI, but "none of those factors should be considered in that they were void and entered without due process." Arterberry cites *Mayo v. State* for the proposition that the trial court's consideration of a void conviction during sentencing is reversible error. *See* 677 S.W.2d 30, 32 (Tex. Crim. App. 1982) (considering effect of prosecutor's emphasizing a void previous conviction and arguing to the jury that the defendant had a previous conviction and thus had already been given a chance and should not be given another one).

We have rejected Arterberry's arguments raised under his first point and have held that the trial court did not abuse its discretion by proceeding to adjudication in the deferred cases. Additionally, we reject the argument that only by Arterberry's pleading true could the trial court have considered the deferred cases in assessing punishment for the new offenses. The facts of those cases were properly considered by the trial court regardless of Arterberry's pleas, as was the fact that he had been placed on deferred adjudication for those offenses. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3; *Kohler v. State*, No. 02-10-00031-CR, 2011 WL 582735, at *4 (Tex. App.—Fort Worth Feb. 17, 2011, no pet.) (mem. op., not designated for publication). And again, the same acts that gave rise to the State's petitions and Arterberry's initial true pleas were the very acts for which Arterberry was being sentenced in the new case. Regardless of whether Arterberry had admitted to committing those acts by pleading true in the deferred cases, he undisputedly admitted to committing those acts by pleading guilty in the new cases and by signing the judicial confession. The trial court had to consider the facts and circumstances of the events of September 17 in order to sentence Arterberry for the offenses that he committed that day, and the trial court properly considered that, at the time he committed those offenses, he was on deferred-adjudication community supervision for similar offenses.

In other words, even if the State had never moved to proceed to adjudication in the deferred cases, the trial court would have had the same information before it in sentencing Arterberry in the new cases: that he was on deferred adjudication for

13

possession of a controlled substance and unlawful-firearm possession at the time that he committed the new offenses; that when he had committed the deferred offenses, he was intoxicated and had his young child with him; that he had committed the new offenses only a few months after being placed on deferred adjudication; and that he had admitted to committing the new offenses. Because the trial court considered information that it was permitted to consider in sentencing, we overrule Arterberry's second point.

## Conclusion

Having overruled Arterberry's two points, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 14, 2025