

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. WR-42,794-05

**EX PARTE GILMORE FRANKLIN COX, Applicant**

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. CR-29,938-A IN THE 217th DISTRICT COURT
## FROM ANGELINA COUNTY

JOHNSON, J., delivered the opinion of the Court in which MEYERS, ALCALÁ, RICHARDSON, and NEWELL, JJ., joined. KELLER, P.J., filed a concurring opinion in which KEASLER and HERVEY, JJ., joined. YEARY, J., concurred.

## O P I N I O N

Pursuant to a plea bargain, applicant plead guilty to one count of possession of a controlled substance (Count I) and no contest to one count of possession of certain chemicals with intent to manufacture a controlled substance (Count II). The trial court found him guilty and sentenced him to twenty years' imprisonment on Count I and thirty-five years' imprisonment on Count II, with the sentences to run concurrently. On appeal, applicant challenged his conviction on Count II, alleging that it failed to sufficiently allege an offense. The state argued that the court of appeals should dismiss applicant's appeal because he had entered his pleas and waived appeal as part of a plea

bargain, and the court of appeals agreed. *Cox v. State*, No. 12-11-00297-CR, 2012 WL 2501031 at *2 (Tex. App.–Tyler June 29, 2012, no pet.) (mem. op., not designated for publication).

Applicant filed this application for a writ of habeas corpus. After review, we find that, because the plea bargain was a package deal and part of this plea bargain cannot be fulfilled, the entire plea bargain is unenforceable, thus the parties must be returned to their original positions. We remand this case to the trial court for re-sentencing.

**Facts**

The record in this case contains a number of inaccurate or contradictory assertions, and it is sometimes difficult to ascertain what actually happened. It is undisputed that applicant's indictment alleged in Count I that he possessed methamphetamine in an amount less than one gram, a state-jail felony.[1] Count II alleged that, with the intent to manufacture methamphetamine, he possessed its immediate precursors, namely "acetone, lye, iodine crystals, lighter fluid, and/or red phosphorus," a second-degree felony.[2] The indictment also contained four enhancement paragraphs that alleged prior sequential felonies as to both charged offenses.[3] As enhanced, Count I was punishable as a second-degree felony, and Count II was punishable as a habitual felony.[4] Applicant's potential punishment range was thus from two to twenty years in prison for Count I and from twenty-five to

---

[1]  TEX. HEALTH & SAFETY CODE § 481.115(a), (b).

[2]  TEX. HEALTH & SAFETY CODE § 481.124(a)(2), (d)(1).

[3]  1) Oct. 1978, burglary, cause number 9099

   2) Dec. 1987, manufacture of a controlled substance, cause number 13,477

   3) May 1992, forgery, cause number 15,999

   4) Jan. 1998, engaging in organized criminal activity, cause number 20,241

[4]  TEX. PENAL CODE §§ 12.425(b), 12.42(d).

ninety-nine years or life in prison for Count II.[5]

The trial court denied applicant's motion to suppress, and then, on the advice of counsel, applicant waived his right to a jury trial by signing a handwritten statement of waiver. However, according to the affidavit of defense counsel, applicant did not plead to the charges at that time.

According to the affidavit of the prosecutor, the original plea bargain was twenty years for Count I and a cap of thirty-five years for Count II. In exchange, as to Count II only, the state agreed to both drop one of the four enhancement paragraphs (which, it was the prosecutor's belief, reduced the punishment range to that of a first-degree felony) and recommend a punishment cap of thirty-five years in prison. There was no explicit plea offer as to Count I, and the punishment range remained that of a second-degree felony.[6] Defense counsel believed that dropping one enhancement paragraph would decrease the punishment range for Count II to that of a second-degree felony with a maximum of twenty years in prison. Both beliefs were incorrect; waiving one enhancement paragraph did nothing to affect the habitual-punishment range, which requires only two paragraphs and three such paragraphs remained. When the mistakes were recognized, applicant moved to withdraw his waiver of jury trial.

During the hearing on the motion to withdraw applicant's jury waiver, and with the court's

---

[5] TEX. PENAL CODE §§ 12.33, 12.42(d).

[6] "The original plea offer was extended on August 6, 2010. The offer was 20 years TDCJ-ID on Count I, which was a state jail felony enhanced to second-degree punishment, and 35 years TDCJ-ID on Count II, which was a second [-]degree offense enhanced to 25-life punishment. After negotiation with the Defendant's attorney, the State agreed to drop one of the enhancements to make Count II a first-degree punishment range, and also recommend a cap of 35 years as to Count II. No cap or other agreement was made as to Count I." Affidavit of Assistant District Attorney at trial. Supplemental Writ Application at 74.

encouragement, counsel engaged in a brief negotiation and reached a plea bargain.[7] At a second setting, applicant agreed to plead guilty to Count I and no contest to Count II. The offer was essentially the same as the original, and again contained no explicit terms as to Count I except applicant's waiver of jury trial and appeal. The trial court accepted the plea bargain, found applicant guilty on both counts,[8] and sentenced him to twenty years in prison for Count I and thirty-five years in prison for Count II, to run concurrently.

Applicant appealed, challenging both the denial of his motion to suppress evidence and the voluntariness of his pleas. The state argued that applicant had waived his right to appeal. The court of appeals agreed, finding that applicant, as part of the plea bargain, entered his pleas and waived appeal in exchange for the dismissal of enhancements and a cap on punishment. The court of appeals reasoned that, because the state gave some consideration for the waivers, the pre-sentencing waivers of appeal were enforceable. *Cox* at *3 (citing *Ex parte Broadway*, 301 S.W.3d 694, 699 (Tex. Crim. App. 2009)).

Applicant filed this application for a writ of habeas corpus contending, among other things, that his trial counsel failed to investigate whether the substances alleged in Count II were, in fact, immediate precursors, causing him to plead guilty to an invalid count. On our first review, we remanded the writ to the trial court to determine if the substances that were plead as "immediate precursors" in the indictment for manufacturing methamphetamine were, in fact, "immediate

---

[7] Applicant was not present at that hearing. Defense counsel had requested that a bench warrant be issued to secure his attendance, but the request had not been processed because the person in the District Attorney's office who did that job had left the office.

[8] Even though the parties agree that applicant plead no contest to Count II, the judgment reflects a plea of guilty to that count. The judgment also contains findings of true as to two enhancement paragraphs on each count and states that there was no plea bargain.

precursors." The trial court found that the substances either were not precursors or had been suppressed and that Count II, manufacturing, was invalid.

The state continued to assert that the acetone seized from applicant's home was actually 3,4-methyenedioxyphenyl-2-propanone. We remanded the writ again, instructing the trial judge to determine if 3,4-methyenedioxyphenyl-2-propanone is also known as acetone. If it is not, the trial judge was instructed to consider whether the plea bargain was a package and, if so, consider the appropriate remedy. The trial court concluded that acetone is not 3,4-methyenedioxyphenyl-2-propanone and that the conviction on Count II was invalid, but equivocated as to whether the plea bargain was a package deal: the trial judge found that the plea bargain was not a package deal, yet two sentences later stated, "If there is any doubt that the Counts and the deals were inseparable, then Cox can be placed into the position he was in prior to the pleas by restoring his right to a Jury Trial that he requested be restored prior to his plea." Because the valid conviction under Count I remains, we filed and set this case for submission to determine the appropriate remedy when, as here, only a part of a plea bargain is invalidated.

## Plea Bargains

Because plea bargains are contractual agreements between the state and defendant,[9] we apply general contract-law principles. *Ex parte Moussazadeh*, 64 S.W.3d 404, 411 (Tex. Crim. App. 2001).

> "Plea bargaining is a process which implies a preconviction bargain between the State and the accused whereby the accused agrees to plead guilty or nolo contendere in exchange for a reduction in the charge, a promise of sentencing leniency, a promise of a recommendation from the prosecutor to the trial judge as to punishment, or some other concession by the prosecutor that he will not seek to have the trial

---

[9] *State v. Moore*, 240 S.W.3d 248, 251 (Tex. Crim. App. 2007).

judge invoke his full, maximum implementation of the conviction and sentencing authority he has," i.e., it is the process where a defendant who is accused of a particular criminal offense, and his attorney, if he has one, and the prosecutor enter into an agreement which provides that the trial on that particular charge not occur or that it will be disposed of pursuant to the agreement between the parties, subject to the approval of the trial judge. Put another way, "plea bargaining is the process by which the defendant in a criminal case relinquishes his right to go to trial in exchange for a reduction in charge and/or sentence."

*Perkins v. Third Court of Appeals*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987) (quoting Heuman, Plea Bargaining (1978 edition)). However, "[a]lthough contractual concepts apply to plea bargains, such should not be strictly enforced to the detriment of due process." *Ex parte Adkins*, 767 S.W.2d 809, 810 (Tex. Crim. App. 1989). The terms of plea agreements, being contractual in nature, are left to the parties to determine and agree upon, and this Court will rarely disturb the terms of such agreements. *Ex parte Williams*, 758 S.W.2d 785, 786 (Tex. Crim. App. 1988). This is not to say, however that "mutual benefit should not also be considered." *Ex parte Adkins*, 767 S.W.2d at 810 (citing *Shannon v. State*, 708 S.W.2d 850, 851 (Tex. Crim. App. 1986).

It is well established that, after the judge has accepted a plea bargain in open court, a defendant has a right to enforce the state's part of the plea bargain. *Bitterman v. State*, 180 S.W.3d 139, 141 (Tex. Crim. App. 2005). Plea bargains play an important role in the criminal-justice system. In order to protect the constitutional rights of the defendant, there are strict federal and state guidelines and requirements regarding the defendant's ability to enter into such an agreement, including a requirement that, if a defendant's plea is made based on a promise given by the state, the state must keep its promise or the plea will be rendered involuntary. *Id.* When defendants accept a plea-bargain offer, they waive a number of fundamental constitutional rights including, among others, a trial by jury, the right to confront one's accusers, the right to present witnesses in one's

defense, the right to remain silent, and the right to be convicted only by proof beyond a reasonable doubt. *See Santobello v. New York*, 404 U.S. 257, 267 (1971). Under Texas appellate rules, a defendant also waives the right to appeal. Tex. R. App. P. 25.2(a)(2).

When the state breaches its promise with respect to a plea agreement that has been accepted by the trial court, the defendant pleads based on a false premise, and the conviction cannot stand. *Bitterman* at 142.

## Multiple-Count Plea Bargains

Article 21.24 (a) of the Texas Code of Criminal Procedure states that "two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code." Consistent with contractual concepts, the state and the defendant are free to reach a bargain as to one count, multiple counts, or none at all. Factors that might persuade the parties to agree to a plea bargain include, but are not limited to, the weight of the evidence, the seriousness of each offense, future availability of witnesses or evidence, the criminal history of the defendant, the way in which these factors intertwine with one another, and the connection between the counts in the indictment. In determining the remedy when a multi-count plea bargain has been broken, we consider whether the bargain was a "package deal" or an agreement with severable parts.

Article 21.24 requires the underlying facts to be closely connected,[10] so multiple-count indictments always have some interplay between the separate offenses. But, as with any plea bargain, the consideration that is offered by the state and induces the plea is key. When a plea bargain rests to any significant degree on a promise or agreement by the state, such that the promise

---

[10] Article 21.24 requires that the "offenses arise out of the same criminal episode."

or agreement can be said to be part of the consideration, the promise must be kept. Because of the due-process protections provided to defendants in plea negotiations, if the promise cannot be kept, the plea is rendered involuntary, and both parties must be returned to their original positions. *Santobello v. New York*, 404 U.S. at 262. *See also Shannon v. State* at 852.

**Analysis**

In *Shannon*, the defendant was charged with delivery of diazepam in an amount over 400 grams. In exchange for Shannon's agreement to plead guilty, the state agreed to reduce the delivery charge to possession and to recommend a sentence of two years in prison. *Id.* at 851. On discretionary review, we found that the agreement was invalid because possession of diazepam is a Class A misdemeanor and therefore could not be punished with a two-year prison sentence. *Id.* at 852. We held that, when a defendant who has entered a negotiated plea of guilty challenges his conviction and is successful, the appropriate remedy, if possible, is specific performance of the plea. If specific performance is not available, then the appropriate remedy is withdrawal of the plea, with both parties returning to their original positions. *Id*. Returning the parties to their original positions means a return to the positions that the parties held before the plea agreement was made and therefore does not bind the state to its previous agreement. *Ex parte Rich*, 194 S.W.3d 508, 514-15 (Tex. Crim. App. 2006) (citing *Shannon*) ("the proper remedy is to allow Applicant to withdraw his plea and remand the case to the trial court, putting both parties back in their original positions before they entered into the plea bargain.").

In *State v. Moore*,[11] we applied the same remedy, albeit without citing *Shannon*.

Ordinarily, when one side fails to abide by the plea agreement, two potential

---

[11] 240 S.W.3d 248 (Tex. Crim. App. 2007).

remedies exist. First, pertaining mainly to the defense, a plea may be withdrawn. Second, the non-breaching party may demand specific performance of the remainder of the plea agreement. The application of these remedies for breach of a plea agreement has been illustrated in multiple holdings.

*Id.* at 251-52 (citing *Perkins v. Court of Appeals*, 738 S.W.2d 276, 283 (Tex. Crim. App. 1987)).

In *Ex parte De Leon*,[12] we explicitly reaffirmed the *Shannon* holding, finding that the "proper remedy is to return both parties to their original pre-plea positions." *Id.* at 90-91.

However, in *Ervin v. State*, 991 S.W.2d 804, 816 (Tex. Crim. App. 1999), we held that, in some circumstances, the state may waive an invalid portion of the judgment and retain the remainder of the plea agreement. That decision was based on implications from *Ex parte McJunkins,* 954 S.W.2d 39, 41 (Tex. Crim. App. 1997).

McJunkins was indicted for capital murder. He reached a plea agreement whereby he would plead guilty to murder and aggravated robbery and the state would dismiss the capital-murder indictment. *Id* at 39. The trial court accepted the plea arrangement and sentenced the applicant to two consecutive life sentences. *Id.* McJunkins did not appeal, but filed an application for habeas corpus seeking relief from the cumulation order. *Id.* We initially granted relief, but after the state offered to request removal of the cumulation order, we withdrew our mandate and granted a rehearing to determine if the state can waive the benefit of a cumulation order and whether a defendant can waive the benefit of the concurrent-sentences provisions. *Id.* We determined that the provisions of Texas Penal Code § 3.03 (defendant's right to mandatory concurrent sentences for offenses consolidated under Texas Penal Code § 3.02) in combination with the provisions of Texas Penal Code § 3.04 (defendant's right to severance of offenses consolidated under Texas Penal Code

---

[12] 400 S.W.3d 83 (Tex. Crim. App. 2013).

§ 3.02) resulted in a defendant's right to waive both the right to severance by agreeing to a single trial and the right to concurrent sentences by electing to sever consolidated offenses. Whether such waivers became part of a plea bargain was a decision left entirely to the parties. *Id.* at 40.

Ervin agreed to plead guilty to charges of intoxication manslaughter and manslaughter arising out of a traffic accident involving a single victim. *Ervin* at 805. This Court concluded that intoxication manslaughter and manslaughter were the same offense for double-jeopardy purposes when they involve the same victim and accordingly found that Ervin's convictions violated double jeopardy. *Id.* at 817. But instead of urging this Court to set aside the entire plea agreement, the state suggested that we vacate only the manslaughter conviction, and we held that the state "may be able to waive an illegal portion of a judgment and maintain the remainder of the plea agreement." *Id.* Although both charges were plead together, perhaps raising the appearance of a "package deal," Ervin did not claim that his plea was involuntary for those reasons.[13] He asserted only that the plea was involuntary because of the double-jeopardy violation, and we granted relief. As with *Ex parte McJunkins*, the record did not show that the parties were not satisfied with the consideration that they received. In neither of those cases, however, were there allegations that the plea was not intelligent, knowing, and voluntary.

## Application

In the instant case, applicant agreed to plead guilty to Count I and no contest to Count II and waive his rights to appeal and to jury trial as to both counts. In exchange, the state agreed, as to Count II only, to waive one enhancement paragraph and to recommend a sentencing cap of thirty-five

---

[13] Applicant raised ineffective assistance of counsel for failing to conduct a diligent investigation and for failing to file a motion to suppress and a motion for discovery.

years. On remand from this court, the trial court entered findings of fact and conclusions of law determining that the plea agreement was not a "package deal." We disagree.[14]

Because Count II did not state an offense and was therefore not supported by the evidence, the terms of the plea bargain in regard to Count II were unenforceable. The consideration given by the applicant as to Count I was the waiver of his right to a jury trial on Count I in order to reduce the punishment range on Count II. Because the terms as to Count II are unenforceable, the plea bargain became an agreement by applicant to plead guilty to Count I for the maximum sentence allowed and to waive his rights to appeal and to jury trial, all without any consideration required from the state. Because the negotiated consideration by the state was the waiver by applicant of a constitutional right in one count for the reduction of the sentence by the state in a different, invalid count, we hold that the plea agreement to be a "package deal"; a reduced punishment range for Count II was the consideration offered by the state to induce the promise of applicant to waive his right to a jury trial in Count I. Because applicant plead guilty to an allegation that did not state an offense, we cannot say that he knowingly, intelligently, or voluntarily waived his rights. In these circumstances, applicant's successful challenge to his conviction for Count II negates the entire plea bargain, and the parties must be returned to their original positions.

Accordingly, we grant relief and direct the trial court to allow applicant to withdraw his plea and to return both parties to their original positions.

---

[14] The trial court determined that "[i]n the original plea deal Cox received no consideration in exchange for his guilty plea to Count I other than the consideration that only affected the punishment range for Count II. When Count II was found to be invalid, Cox's plea to Count I was left with no consideration and as such was not a plea bargain." When the invalidation of one count destroys the plea bargain, each count is not separate from one another. We determine that to be the essence of a "package deal."

Delivered:  January 27, 2016
Publish