

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. WR-90,618-04, WR-90,618-05 & WR-90,618-06

### EX PARTE MOHSIN MAZHAR SYED, Applicant

### ON APPLICATIONS FOR WRITS OF HABEAS CORPUS
### CAUSE NOS. CR49672-B, CR49872-B, & CR49396-B
### IN THE 238TH DISTRICT COURT FROM MIDLAND COUNTY

**KELLER, P.J. filed a dissenting opinion in which YEARY and KEEL, JJ., joined.**

### <u>DISSENTING OPINION</u>

Applicant seeks to have three convictions reconsidered in light of *Ex parte Lewis*.[1]  In *Lewis*, Weldon Ralph Petty, Jr., participated as a prosecutor in the defendant's case while also working as a law clerk on other defendants' cases for judges in Midland County.  In some ways, Applicant's situation is like *Lewis*, but it differs from *Lewis* in three significant respects.  First, Petty participated in only one of Applicant's cases.  Second, in the case in which Petty participated, that participation was limited to addressing the question of the admissibility of extraneous offenses.  And third, the

---

[1]  688 S.W.3d 351 (Tex. Crim. App. 2024).

trial judge ruled *against* the State on that question, finding the extraneous offenses to be inadmissible. I would hold that Petty's limited participation in one of Applicant's cases fails to show judicial bias against Applicant in violation of due process.

## I. BACKGROUND

Applicant had three sexual assault cases pending. One of those cases was tried to a jury. During trial, the trial judge called Petty to the courtroom to advise on whether certain extraneous offenses were admissible at the guilt stage. Petty had no involvement in the case before that point, but the prosecutors and the defense attorneys agreed to allow him to speak on the extraneous-offense issue.[2] We do not know what position Petty took on the issue,[3] but the trial judge ruled against the State, finding the extraneous offenses inadmissible.[4] Petty had no further involvement in the case. A jury found Applicant guilty.

After the verdict, the parties reached a sentencing agreement. Applicant pled guilty in the two remaining cases and received concurrent twelve-year sentences on each of the three cases.

---

[2] In an affidavit in connection with Applicant's -06 application, Petty said that he had nothing to do with Applicant's case other than to address the extraneous-offense issue in open court. The habeas court found Petty's affidavit regarding his limited participation in the case to be credible.

[3] A portion of the court reporter's record of trial proceedings included in the -03 application record suggests that the discussion might have been in an off-the-record conference.

[4] Petty's affidavit stated that the trial judge ruled in Applicant's favor on the extraneous offense issue. Petty's affidavit stated that he did not remember what he said on the issue but that he reasonably believed, in light of the trial judge's ruling, that his comments were favorable to Applicant's position. Affidavits from Applicant's defense attorneys in the -03 application also support a conclusion that the trial judge excluded the extraneous offenses. Rodion Cantacuzene, Jr., said, "[I]f the court had allowed the jury to hear the extraneous offenses, then the cross examination of the complainant would have been very different." Dan Cogdell also said that "the door to the substantial trough of extraneous conduct would have been opened" if the defense had cross-examined the complainant differently and such door-opened evidence would have been "draconian evidence which we successfully had theretofore excluded."

## II. ANALYSIS

The Supreme Court has determined that due process can be violated by a judge presiding over a case: (1) when the judge has a financial interest in the outcome of the case, or (2) when the judge has a conflict of interest.[5]  When a judge has a financial interest or a conflict of interest in a case, the issue is whether, "under a realistic appraisal of psychological tendencies and human weakness, the interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."[6] The judge here had no financial interest in these cases, so the only question is whether she had a conflict of interest based on Petty's position as "law clerk."

But the Supreme Court's cases addressing judicial bias have involved interests (financial or conflicting) that apply to an entire case.[7] There, the complaining party has lost the case, and the Court is having to look at whether an interest that applies to the entire case is weighty enough to have created an unacceptable likelihood of having caused that loss. We are in uncharted territory in addressing, for due process purposes, a conflict of interest that applies only to a discrete proceeding within a case where the party who is supposedly adversely affected by the conflict prevails in that

---

[5] *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 872, 877 (2009).

[6] *Id.* at 883-84.

[7] *See Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016) ("One of the justices on the State Supreme Court had been the district attorney who gave his official approval to seek the death penalty in the prisoner's case."); *Caperton,* 556 U.S. 868, 872 (2009) (An appellate "justice had received campaign contributions in an extraordinary amount from, and through the efforts of, the board chairman and principal officer of the corporation found liable for the damages."); *In re Murchison*, 349 U. S. 133, 136 (1955) ("[T]he same judge presiding at the contempt hearing had also served as the 'one-man grand jury' out of which the contempt charges arose."); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927) (pecuniary interest of mayor who decided case in the outcome of the case).

discrete proceeding. Petty participated only in a discussion about extraneous offenses—essentially a suppression hearing on that evidence. The trial judge then ruled in Applicant's favor on the issue.

I would hold that, on these facts, Applicant did not suffer a due-process violation due to judicial bias. The only conflict of interest the judge could have had in Applicant's cases was at the extraneous-offenses suppression hearing in his first case. That was the only proceeding that Petty participated in. And the "risk" of actual bias against Applicant in that proceeding is *zero* because the trial court ruled in Applicant's favor. It would be a different story if the issue were being considered *before* the suppression ruling, when there might still be a risk that the judge's ruling would be unduly influenced in the State's favor by Petty's employment as a law clerk. But with the benefit of hindsight, we know with 100 percent certainty that the State did not in any way benefit from Petty's participation in the proceedings. Of course, if the State had won at the suppression hearing, then we would not be able to eliminate the probability or risk of actual bias from our consideration. But because the State lost at this hearing, we can be confident that Petty's participation did not tilt the playing field in the State's favor.

And Petty did not participate in the two remaining cases at all. They were part of a package deal, so if the claim in the first case had merit, we might have to decide whether the entire plea has to be undone.[8] I need not address that question because I conclude that Applicant is not entitled to relief in the first case. I would deny relief on all three cases.

I respectfully dissent.

Filed: August 21, 2024
Publish

---

[8] *See Ex parte Cox*, 482 S.W.3d 112, 114 (Tex. Crim. App. 2016).