

# In the Court of Criminal Appeals of Texas

No. WR-83,074-06

EX PARTE MICHAEL CHARLES HILL,

*Applicant*

On Application for a Writ of Habeas Corpus
Cause No. W-9334824-A in the 195th District Court
From Dallas County

YEARY, J., delivered the opinion for the Court in which SCHENCK, P.J., and KEEL, FINLEY, and PARKER, JJ., joined. RICHARDSON, NEWELL, WALKER, and MCCLURE, JJ., dissented.

In November of 2023—more than twenty-three years after his felony theft conviction in this case became final—Applicant has filed this, his first application for writ of habeas corpus that challenges the revocation of his community supervision for this theft conviction. TEX. CODE CRIM. PROC. art. 11.07. He claims that his plea of true in that

revocation proceeding is invalid because it was part of a "package deal" in which he also pled guilty to another offense, which plea has since been invalidated as involuntary. *See Ex parte Cox*, 482 S.W.3d 112 (Tex. Crim. App. 2016). Without reaching the merits of Applicant's claim, we will deny him relief under the equitable doctrine of laches. *See Ex parte Smith*, 444 S.W.3d 661, 667 (Tex. Crim. App. 2014) ("A court of equity, which is never active in granting relief against conscience or public convenience, has always refused its aid to stale demands where a party has slept upon his rights, and acquiesced for a great length of time.") (quoting *Sullivan v. Portland & Kennebec R.R. Co.*, 94 U.S. 806, 811−12 (1876)); *Ex parte Perez*, 445 S.W.3d 719, 727 (Tex. Crim. App. 2014) (the State's interest in the finality of a twenty-three-year-old conviction, when significant periods of time elapsed while the applicant took no action to contest it, "weighs heavily against applicant's request for equitable relief").

## I. BACKGROUND

### A. Dallas County Theft Conviction

Applicant was indicted in October of 1993 in Dallas County for the offense of theft of property valued at between $750 and $20,000, a third-degree felony at that time. Acts 1991, 72nd Leg., ch. 565, §1, p. 2003, eff. Sept. 1, 1991. The offense was committed on July 21, 1993. On February 4, 1994 (thirty-one years ago), Applicant pled guilty to this offense and received a six-year sentence, probated for six years. On October 22, 1999, the State filed an amended motion to revoke that community supervision, alleging, among other things, that Applicant had committed the offense of aggravated sexual assault, also in Dallas

County, on February 4, 1999. On May 5, 2000, the trial court revoked Applicant's community supervision for the theft conviction and sentenced him to five years in the penitentiary. Applicant did not appeal.

### B. Dallas County Aggravated Sexual Assault Conviction

On the same day in 2000 that Applicant pled true to the State's motion to revoke his community supervision in this case, he also pled guilty to the aggravated sexual assault offense that supported the revocation of community supervision for his theft conviction. In separate plea papers, Applicant entered both pleas (true and guilty) in exchange for prosecutorial recommendations of five years confinement for each offense, which sentences would run concurrently by law. As with the theft conviction, Applicant did not appeal the aggravated sexual assault conviction. And for the next thirteen years following the trial court's acceptance of these pleas, Applicant did absolutely nothing to challenge *either* the theft conviction or the aggravated sexual assault conviction.

### C. Hunt County Convictions

Then, in 2010, Applicant was indicted in Hunt County for two new offenses: sexual assault of a child and indecency with a child. Applicant was convicted by a jury for both offenses, and his 2000 Dallas County aggravated sexual assault conviction was used for enhancement in both cases as well. In each case, Applicant was sentenced to confinement for life. Even then, he brought no challenge to the 2000 revocation of community supervision in the Dallas County theft case—the subject of the present writ application.

## II. PRIOR HABEAS APPLICATIONS
### A. Dallas County Aggravated Sexual Assault Conviction

It was only after he was convicted of the two Hunt County offenses, and assessed two life sentences, and after the convictions were upheld on direct appeal in 2013, that Applicant began post-conviction habeas corpus proceedings to challenge his 2000 Dallas County aggravated sexual assault conviction. *See Ex parte Hill*, 632 S.W.3d 547, 551−52 (Tex. Crim. App. 2021) (describing the protracted timeline for Applicant's initial post-conviction challenge to the 2000 Dallas County conviction for aggravated sexual assault). This Court eventually granted Applicant relief from his 2000 Dallas County aggravated sexual assault case. We did so in 2018. *Ex parte Hill*, No. WR-83,074-03, 2018 WL 2327177, at *1 (Tex. Crim. App. May 23, 2018) (not designated for publication). That relief was predicated on an alleged *Brady* violation that the Court said had rendered Applicant's guilty plea involuntary. *See Hill*, 632 S.W.3d at 553 (explaining the basis for the Court's having granted relief in 2018 on the 2000 Dallas County aggravated sexual assault case).

### B. Hunt County Convictions

Then, before the year 2018 was out, Applicant filed post-conviction applications for writs of habeas corpus in Hunt County to challenge his two convictions from there. He argued that the use of the 2000 Dallas County aggravated sexual assault conviction for enhancement of punishment in the Hunt County cases had rendered the sentences in those cases illegal. *See id.* at 550 ("Applicant now argues that his enhanced life sentences are illegal and that he should be resentenced."). What he *once again* failed to do was to initiate any

challenge to the 2000 revocation of his community supervision for the Dallas County theft case.

In 2021, the Court granted Applicant partial habeas relief on his applications challenging the Hunt County sexual assault of a child and indecency with a child convictions. The Court ruled that these convictions were illegally enhanced with the 2000 Dallas County aggravated sexual assault conviction. *Id*. at 557. The Court then ordered resentencing on only the Hunt County sexual assault of a child case. *Id*. at 558.

As to the Hunt County indecency with a child conviction, the Court concluded, based on *Ex parte Parrott*, 396 S.W.3d 531 (Tex. Crim. App. 2013), that use of the 2000 Dallas County aggravated sexual assault conviction for enhancement purposes had been harmless. *Id*. at 558−59. Why? Because Applicant had yet *another* prior felony conviction that could have served to enhance the indecency with a child conviction, namely, *his Dallas County felony conviction for theft*—for which his community supervision had been revoked in 2000—that he now challenges in this proceeding. *Id*. Only now—after this Court already relied upon that Dallas County theft case to declare that the claimed illegal enhancement of the Hunt County indecency with a child case was harmless—has Applicant finally brought a challenge to his 2000 Dallas County theft conviction.

### III. THE CURRENT HABEAS CHALLENGE

### A. Applicant Challenges the Dallas County Theft Conviction for the First Time—Twenty-Three Years After the Fact

In October of 2023, twenty-three years after his community supervision was revoked for his Dallas County felony theft offense,

Applicant filed the present application for writ of habeas corpus to challenge that conviction. He now argues that his plea of true in the 2000 revocation proceeding was part of a "package deal," whereby he also pled guilty to the aggravated sexual assault offense, receiving concurrent five-year sentences for both. Because this Court set aside his guilty plea for the aggravated sexual assault offense in 2018, he contends, his plea of true to the State's motion to revoke his community supervision for the theft offense must also be set aside. Had he been aware of the *Brady* issue in the aggravated sexual assault case, he argues, it is unlikely that he would have plead true to the revocation motion as part of a "package deal," but would instead have held out for a lesser sentence. His plea of true was therefore, he maintains, involuntary.[1]

Of course, by October of 2023, this argument had been available to Applicant at *least* since May of 2018, when this Court accepted Applicant's claim that the *Brady* violation contaminated his guilty plea in the contemporaneous Dallas County aggravated sexual assault case.[2] We see no reason, and Applicant offers none, why he had to wait until after his post-conviction challenges to the Hunt County sentences had run their course before he could begin to contest his 2000 community supervision revocation for the theft offense based on this "package deal"

---

[1] Applicant has cited the 2016 case from this Court, *Ex parte Cox*, 482 S.W.3d 112 (Tex. Crim. App. 2016), in support of his claim for relief on this "package deal" theory. The State has made a substantial argument why *Cox* is distinguishable. State's Response at 10−11. Because of our disposition based on laches, we need not engage in the merits of that debate today.

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

argument. Even after the collateral consequence of that conviction (*i.e.*, its use to render the illegal sentence in his Hunt County indecency with a child conviction harmless, under *Parrott*) became manifest, Applicant continued for more than five years to sleep on his rights.

### B. Laches Bars Relief

In May of 1999—almost a full year before Applicant's community supervision in the instant theft case was revoked—this Court affirmatively recognized that the doctrine of laches could apply in the post-conviction application for writ of habeas corpus context. In *Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999), the Court declared that "the doctrine of laches is a theory which we may, *and should*, employ in our determination of whether to grant relief in any given [Article] 11.07 case." (emphasis added).

Later, in *Ex parte Perez*, 398 S.W.3d 206 (Tex. Crim. App. 2013), the Court refused to adopt a presumption of prejudice to the State after a specific period of delay. *Id.* at 210. In its place, however, the Court adopted what it called a "sliding scale" standard for assessing prejudice for purposes of laches. *Id.* at 217. "With respect to the degree of proof required," the Court announced, "the extent of the prejudice the State must show bears an inverse relationship to the length of the applicant's delay." *Id.* Thus, "the longer an applicant delays filing his application, and particularly when an applicant delays filing for much more than five years after conclusion of direct appeals, the less evidence the State must put forth in order to demonstrate prejudice." *Id.* at 217−18.

Applicant in this case waited twenty-three years from the time the community supervision in his Dallas County theft case was revoked

to challenge that revocation for the first time in post-conviction habeas proceedings. He even waited more than five years to file that first writ application after the present "package deal" rationale for challenging the revocation became apparent, in 2018—after he had obtained post-conviction habeas corpus relief in the Dallas County aggravated sexual assault conviction.[3] Under these circumstances, we conclude that the State's burden of demonstrating prejudice on the sliding scale is relatively low. *See id.* at 217.

On the present record, the question of whether Applicant's pleas of guilty and true in the Dallas County cases were part of a "package deal" is hotly contested, and a definitive answer is not readily ascertainable from the plea papers alone. To complicate matters, Applicant's attorney from his theft community supervision revocation case, we are informed, died in 2021—three years *after* Applicant obtained *Brady*-based relief in his Dallas County aggravated sexual assault case in 2018. By waiting so long to challenge first the Dallas County aggravated sexual assault conviction and now the Dallas County theft revocation case, Applicant has made sure that a critical witness to whether the pleas in those two proceedings constituted a "package deal" is now unavailable. The State also observes, in its response to the Applicant's writ application, that the prosecutor has also died.

---

[3] It might be argued that Applicant's "package deal" claim in this case did not become available to him *until* 2018, when this Court granted *Brady*-based relief on his Dallas County aggravated sexual assault conviction. That fails to take into account that Applicant delayed thirteen years—from 2000, when his Dallas County aggravated sexual assault conviction became final, until 2013, when he first challenged it in a post-conviction application for writ of habeas corpus—to try to invalidate *that* conviction.

These facts show that the State's ability to contest Applicant's claim on habeas, has been compromised by the delay. *See Carrio*, 992 S.W.2d at 487−88 (suggesting that the prejudice that the State must show is in its ability to respond to the applicant's habeas claims). In addition, it is far from certain that the State would now be capable of marshalling the evidence necessary to support its motion to revoke Applicant's theft community supervision—twenty-three years after the original revocation proceeding. *See Perez*, 398 S.W.3d at 215 (expanding the concept of laches prejudice also to include consideration of "the State's ability to retry a defendant"). And even if it could successfully secure the revocation of Applicant's community supervision, the State would not now be able to use that conviction again to enhance his punishment for his Hunt County conviction for indecency with a child.

Put another way, an important consideration in the prejudice analysis in this case is that unraveling Applicant's theft conviction at this late date could compromise the State's hard-won judgment in his Hunt County indecency with a child case. When Applicant last challenged his Hunt County convictions, former Presiding Judge Keller dissented to the Court's decision to grant relief on one of those convictions, contending that relief should be denied based on laches. Presiding Judge Keller argued that the State was prejudiced by the significant delay because, by waiting so long to challenge his 2000 Dallas County conviction for aggravated sexual assault, Applicant had prevented the State from being able to retry that case, obtain a new conviction, and still use it to legally enhance the sentences in his later Hunt County convictions. *Hill*, 632 S.W.3d at 560 (Keller, P.J.,

concurring and dissenting); *see also*, *id*. at 567 n.13 (Yeary, J., concurring and dissenting). Applicant has now waited even *longer*— more than *five years longer*—before challenging his 2000 community supervision revocation in his Dallas County theft case. The same complaint that Presiding Judge Keller raised in her 2021 dissent about this kind of protracted and piecemeal post-conviction habeas litigation applies with even greater force here.

Indeed, applying a laches bar *in this case* is also, at least arguably, consistent with the majority's stated reason for *refusing* to do so in *Hill*. 632 S.W.3d at 553. Our 2021 opinion in *Hill* involved a collateral attack on Applicant's Hunt County convictions because they relied upon Applicant's Dallas County aggravated sexual assault conviction for enhancement. There, the Court decided that it was too late to argue that laches barred Applicant's challenge to the use of the Dallas County aggravated sexual assault conviction as an enhancement. The Court observed that "[t]he appropriate time to apply laches because of Applicant's delay in challenging his [Dallas County aggravated sex assault] enhancement conviction was before [the Court] reached the merits [in *that* Dallas County case] and set it aside[.]" 632 S.W.3d at 553. And that is precisely what we do today when we invoke laches in declining to reach the merits of Applicant's "package-deal" claim in this much-belated collateral attack on his Dallas County revocation-of-community-supervision-for-theft case—we address the laches claim before "reach[ing] the merits[,]" and before a challenge is brought to the use of that conviction as an enhancement in other cases.

If the Court granted relief on the present challenge to Applicant's

Dallas County theft revocation case, Applicant would undoubtedly next file yet *another* post-conviction writ application in the Hunt County indecency with a child case. This time, he would no doubt argue that his conviction in the Dallas County theft case should no longer render the use of the 2000 Dallas County aggravated sexual assault conviction (to enhance his sentence in the Hunt County indecency with a child case) harmless under *Parrott*. Even just to entertain such a claim would constitute yet another blow to the State's legitimate interest in the finality of its convictions, many years after the fact, without an adequate justification for the delay, and with demonstrable prejudice to the State. We will not do that.

Relief is denied.

**DELIVERED:**                                              April 23, 2025
**PUBLISH**