**Opinion filed January 15, 2026**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00028-CR

_____

## LESLIE CAMPBELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 16186-D**

## M E M O R A N D U M   O P I N I O N

Appellant, Leslie Campbell, pleaded guilty on November 7, 2023, to the offense of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B), (e) (West Supp. 2025). At the sentencing hearing held on January 18, 2024, the trial court found Appellant guilty and assessed his punishment at confinement in the Institutional Division of the Texas Department

of Criminal Justice for life. In two issues, Appellant challenges his conviction and sentence based on his "plea agreement" with the State. We affirm.

*Background Facts*

Appellant was indicted for aggravated sexual assault of a child under the age of fourteen, indecency with a child by contact, and sexual performance by a child. *See* PENAL § 21.11(a)(1) (West 2019), § 22.021(a)(1)(B)(i), (a)(2)(B), § 43.25(b). Thereafter, Appellant pleaded guilty to the first-degree felony offense of aggravated sexual assault of a child.

As set out below, there is a dispute between the parties as to whether Appellant entered an open plea of guilty or whether he pleaded guilty according to a plea agreement. Our task of resolving this dispute is hampered by the fact that Appellant did not request the preparation of a reporter's record for the November 7 hearing when he entered his plea.[1] Accordingly, we are only able to glean information about the November 7 plea hearing from the written documents in the clerk's record from the plea hearing and the statements of the parties and the trial court at the January 18 sentencing hearing.

With respect to the November 7 plea hearing, Appellant and his trial counsel signed written plea admonishments that contained a section that stated: "The plea recommendation is: _____," in which the word "None" was written. The written plea admonishments also contained a section labeled "**No Plea Agreement (Open Plea)**," which further explained that if Appellant pleaded guilty without the benefit of a plea agreement, then punishment could be set anywhere within the range of punishment prescribed by law for the offense if the court found Appellant guilty. The plea packet was signed by Appellant, his trial counsel, the State, and the trial

---

[1]We note that Appellant is not indigent in this appeal.

court, which included, in relevant part, the written plea admonishments, the written waivers, and Appellant's judicial confession.

Also on November 7, the trial court executed the trial court's certification of Appellant's right of appeal. *See* TEX. R. APP. P. 25.2(a)(2). The trial court checked the box certifying that the case "is not a plea-bargain case," stating that Appellant had the right of appeal "as to punishment issues only."

At the January 18 sentencing hearing, the trial court explained that the applicable range of punishment was five to ninety-nine years or life in prison with a fine not to exceed $10,000, or deferred adjudication for up to ten years. *See* PENAL § 12.32; TEX. CODE CRIM. PROC. ANN. art. 42A.103(a) (West 2018). Appellant stated that he understood the range of punishment. Appellant also acknowledged that he had waived his right to a jury trial. In response to the trial court's question regarding same, the State announced that it was abandoning Counts Two (indecency with a child by contact) and Three (sexual performance by a child) of the indictment. No plea bargain was mentioned or discussed at any time during the sentencing hearing.

The State called C.B.,[2] the victim from Appellant's prior indecency case, to testify. C.B. testified to multiple acts of sexual abuse by Appellant, who was her mother's husband at the time, which he committed when she was eleven. The sexual abuse she testified to included touching, oral sex, and penetration over three separate incidents. She further testified regarding how Appellant's abuse impacted her and continued to impact her personal and professional life. She testified that Appellant was ultimately charged with aggravated sexual assault for those acts, but that he pleaded guilty in a plea agreement to indecency with a child by exposure in exchange for ten years deferred adjudication because her mother did not "think it would be

---

[2]To protect the identities of the child victims, we refer to them by pseudonyms or initials. *See* TEX. CONST. art. I, § 30(a)(1); TEX. R. APP. P. 9.10(a)(3).

healthy for [her] to testify." She testified that Appellant successfully completed his deferred adjudication probation for this charge.

The State then called N.W., the victim of the instant offenses. Appellant was married to N.W.'s grandmother. She testified that Appellant began inappropriately touching her when she was ten or eleven and that it progressed when she turned twelve. N.W. described the sexual assault that occurred at Appellant's house on January 3, 2020. Appellant caused N.W.'s hand to touch his genitals under his clothes. He also rubbed her breasts and buttocks and pulled her pants down and her underwear to the side. He penetrated her vagina with his penis until ejaculation. After the sexual assault, Appellant sent her sexual text messages and nude photos of himself and induced her to send nude photos of herself.

Appellant also testified at the sentencing hearing. He admitted to sexually abusing C.B. and his other stepdaughter on one occasion each, one month apart, when the girls were seven and nine. He also acknowledged committing the alleged offenses against N.W.

After testimony concluded, Appellant's trial counsel requested a sentence of twenty years. The State argued that Appellant should be sentenced to life in prison. The trial court sentenced Appellant to life in prison with no fine. Appellant did not object to the sentence at the time sentence was pronounced, and he did not file a motion for new trial. The trial court's written judgment of conviction stated, under the section titled "Terms of Plea Bargain (if any)," that Appellant had entered an "OPEN PLEA."

*Analysis*

On appeal, Appellant asserts that his guilty plea should be withdrawn, and he should be granted a new trial. In his first issue, Appellant asserts that the terms of the plea agreement entered into between Appellant and the State are "manifestly unjust because the agreement lacks valid consideration," making the plea agreement

unenforceable.  In his second issue, Appellant asserts that "[p]olicy considerations mandate that plea bargains result in a lesser sentence to the defendant."

*Did Appellant Enter into a Plea Agreement with the State?*

The first question we must resolve is whether Appellant entered into any plea agreement with the State.  There are two basic kinds of plea agreements in the United States—sentence bargains and charge bargains.  *See Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003) (discussing sentence-bargaining and charge-bargaining).  In a sentence bargain, the defendant agrees to plead guilty in exchange for the State's binding or non-binding recommendation to the trial court on sentencing.  *See id.*; *Plea Bargain*, BLACK'S LAW DICTIONARY (12th ed. 2024).  For example, in a sentence-bargain, a defendant may plead guilty in exchange for the prosecutor's recommendation of a five-year sentence.  Meanwhile, in a charge bargain, a defendant may plead guilty in exchange for the State dismissing or refraining from bringing other charges.  *See Shankle*, 119 S.W.3d. at 813; *Plea Bargain*, BLACK'S LAW DICTIONARY (12th ed. 2024).  A charge bargain, then, as "[a]n agreement to dismiss a pending charge, or not to bring an available charge, effectively puts a cap on punishment at the maximum sentence for the charge that is not dismissed." *Shankle*, 119 S.W.3d at 813.

Both Appellant and the State agree that there was not a sentence bargain here. However, the parties disagree as to whether there was a charge bargain.  Appellant contends that there was a charge bargain, while the State asserts that Appellant entered an open plea.  The distinction between an open plea and a charge bargain can sometimes blur.  *See Harper v. State*, 567 S.W.3d 450, 454–55 (Tex. App.—Fort Worth 2019, no pet.) (explaining both open pleas and charge bargains leave unresolved the precise punishment a defendant will receive, confusing whether a guilty plea is the product of a charge bargain or an open plea).  However, while a charge bargain involves an agreement between the State and the defendant, an open

plea is generally "a guilty plea entered without any previous agreement with the government." *Bowie v. State*, 135 S.W.3d 55, 69 n.11 (Tex. Crim. App. 2004) (Cochran, J., dissenting).

This distinction—wherein a charge bargain involves an agreement and an open plea does not—is important. The United States Supreme Court has stated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). If the State entered into a charge bargain but did not live up to its part of the bargain, "doubt is raised as to whether or not the guilty plea induced by the broken bargain can be regarded as truly voluntary." *Bass v. State*, 576 S.W.2d 400, 401 (Tex. Crim. App. [Panel Op.] 1979). However, "[i]f there was no agreement, there could be no breach of duty." *Rodriquez v. State*, 509 S.W.2d 319, 321 (Tex. Crim. App. 1974). The question then is whether there was any agreement between Appellant and the State.

As we previously noted, Appellant did not request a reporter's record from the November 7 plea hearing. "An appellant has the burden to properly initiate the completion of a record sufficient to illustrate reversible error." *Perez v. State*, 261 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing TEX. R. APP. P. 35.3). If an appellant fails to do so, and an issue on appeal involves matters omitted from the record due to his or her failure to request or pay for the record, then the appellant's actions prevent the appellate court from adequately addressing the issue. *Id.* (citing *Kent v. State*, 982 S.W.2d 639, 641 (Tex. App.—Amarillo 1998, pet. ref'd, untimely filed). An omission of this type effectively waives any complaint on the issue. *See id.*

Here, the reporter's record from the November 7 plea hearing would be critical in discerning whether Appellant entered into a plea agreement with the State.

6

But Appellant has not brought forward a reporter's record from the hearing. Instead, we only have the clerk's record and the relevant documents in it from November 7 indicating that Appellant entered an open plea.[3] As we have noted, the written plea admonishments indicated that there was no plea recommendation. The trial court's certification indicated that this was "not a plea-bargain case." No plea bargain agreement was mentioned or discussed during the sentencing hearing. Further, the trial court's judgment of conviction included only "OPEN PLEA" under "Terms of Plea Bargain (if any)." Accordingly, there is no indication in the appellate record that this was a plea bargain case.

In the absence of a reporter's record from the November 7 plea hearing, the appellate record establishes that Appellant entered an open plea of guilty. As such, Appellant has waived his claim that he entered into anything other than an open plea of guilty. *See id.*

An open plea is one where there is no plea-bargain agreement regarding punishment. *See Brumit v. State*, 206 S.W.3d 639, 641 (Tex. Crim. App. 2006) (trial court asked defendant, "Do you understand an open plea to the Court means there is no plea agreement between you and your attorney and the State's attorney?" and the defendant agreed); *Ex parte Patterson*, 726 S.W.2d 146, 148 (Tex. Crim. App. 1987) (orig. proceeding) ("The applicant agreed to plead guilty and accept whatever sentence the trial court decided to assess."). "[A]n open plea does not implicitly guarantee any particular sentence." *Grissom v. State*, No. 06-24-00042-CR, 2025 WL 782301, at *4 (Tex. App.—Texarkana Mar. 12, 2025, no pet.) (mem. op., not designated for publication).

Because there was no plea agreement, there was no breach of duty, and thus no promise by the State to be enforced. *See Rodriquez*, 509 S.W.2d at 321. Because

---

[3]The reporter's record from the January 18 sentencing hearing does not contradict the entries in the clerk's record indicating that Appellant entered an open plea of guilty.

Appellant's plea of guilty was an open plea not based on any agreement with the State, the trial court was free to impose any punishment within the range allowed by statute. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984) (citing *Nunez v. State*, 565 S.W.2d 536 (Tex. Crim. App. 1978) ("It is also the general rule that as long as a sentence is within the proper range of punishment it will not be disturbed on appeal.")).

Further, as we have said, Appellant made no objection to his sentence in the trial court, either at the time of disposition or in any posttrial motion. To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a). When a party contends that a plea agreement was breached, he may raise the issue by timely filing a motion for a new trial. *Bitterman v. State*, 180 S.W.3d 139, 143–44. (Tex. Crim. App. 2005). Here, Appellant failed to move for a new trial or otherwise object to the trial court's sentence. As a result, to the extent that Appellant contends that there was a breach of a plea agreement, he has failed to preserve error and has waived his complaint on appeal. *See* TEX. R. APP. P. 33.1(a).

Even if we assume that Appellant entered into a charge bargain rather than an open plea, the record does not reflect a lack of consideration rendering it unenforceable. "At its core, a plea bargain is a contract between the state and the defendant." *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009). "The contract that results from the plea bargaining process is the product of a defendant's relinquishment of his right to go to trial in exchange for a reduction in the charge and/or sentence." *Thomas v. State*, 516 S.W.3d 498, 502 (Tex. Crim. App. 2017) (citing *Perkins v. Ct. App. for Third Jud. Dist. of Tex.*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987)). "In interpreting plea agreements, we apply general contract-law principles." *Id.* (citing *Ex parte Cox*, 482 S.W.3d 112, 116 (Tex. Crim. App. 2016)). In this regard, "[a] plea bargain agreement is a bilateral contract and consists of three

parts: a plea of guilty, the consideration for it, and approval of the agreement by the trial court." *State v. Hatter*, 707 S.W.3d 429, 436 (Tex. Crim. App. 2025). "The 'contract' does not become operative until the court announces it will be bound by the plea bargain agreement." *Id.* at 437 (quoting *Ex parte Williams*, 637 S.W.2d 943, 947 (Tex. Crim. App. 1982)).

Appellant asserts that because the State was permitted to seek the maximum sentence for the charge to which he pleaded guilty, there was no consideration supporting his charge bargain. Appellant is essentially asserting that he did not receive consideration for his plea of guilty because he did not receive a sentence that is less than the maximum punishment. Appellant's contention is not correct. A charge bargain is not intended to offer, as a sentence bargain would, a set sentence. *See Shankle*, 119 S.W.3d at 813. Instead, a charge bargain means that a defendant's punishment will fall within a range capped at the maximum sentence allowed by the charge not dismissed. *Id.* The punishment that Appellant received fell within the applicable punishment range for the charge to which he pleaded guilty.

The State correctly contends that if this were a charge bargain, the State provided consideration by abandoning Counts Two and Three when Appellant pleaded guilty to Count One. Because Appellant received the dismissal by the State of the two lesser charges, the charge bargain, if any, between the parties was supported by consideration. Thus, Appellant's contention that he did not receive anything in exchange for his plea of guilty is simply incorrect.

Accordingly, for the reasons set forth above, we overrule Appellant's first issue.

*Appellant's Public Policy Argument*

In his second issue, Appellant asserts that public policy requires that plea bargains result in a lesser sentence to the defendant. As set out above, we have determined that the record before us does not show that Appellant entered a plea

bargain with the State, and that Appellant has waived his contention on appeal that he had a plea bargain with the State. Accordingly, his public policy argument based upon an alleged plea bargain fails for the same reasons.

Appellant correctly points out that the plea bargain system is important and serves goals of efficiency, effectively conserving judicial and prosecutorial resources. *See Moore*, 240 S.W.3d at 250 ("Plea agreements continue to be a vital part of our criminal-justice system."). However, we disagree with Appellant's contention that the plea bargain system will fail if a defendant is not guaranteed to receive less than the maximum sentence in the event of a plea bargain agreement, particularly a charge bargain.

As recently noted by the Sixth Court of Appeals, "it is not unprecedented for a criminal defendant to acknowledge guilt and hope the sentencing jury [or judge] will look kindly on the acceptance of responsibility." *Grissom*, 2025 WL 782301, at *4.[4] A cursory review of the reporter's record from the sentencing hearing suggests that Appellant adopted this position in the trial court. Additionally, a defendant might be willing to plead guilty to spare his family the "ordeal of a trial." *See Whitaker v. State*, 286 S.W.3d 355, 359, 361 (Tex. Crim. App. 2009). Thus, there are plausible reasons why a defendant may enter an open plea of guilty without a guarantee of receiving less than the maximum sentence for the offense for which he has pleaded guilty.

We overrule Appellant's second issue.

---

[4]We note that the Sixth Court of Appeals dealt with similar claims in *Grissom*.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


January 15, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.